MELLI, Plaintiff in error, vs. THE STATE, Defendant in error.

*January 10—February 4, 1936.*

422

424

For the plaintiff in error there was a brief by *Baker, Juliani & Baker* of Kenosha, attorneys, and *Harold M. Wilkie* of Madison of counsel, and oral argument by *Mr. Wilkie* and *Mr. M. E. Baker*.

For the defendant in error there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, *John P. McEvoy,* district attorney of Kenosha county, and *K. T. Savage,* assistant district attorney, and oral argument by *Mr. McEvoy* and *Mr. Messerschmidt.*

MARTIN, J.   There are twelve assignments of error.   The first and second may be considered together.   They are, (1) that "the court erred in refusing to set aside the verdict because of reasonable doubt as to whether defendant fired fatal shot," and (2) that "the court erred in refusing to set aside verdict because intent to kill necessary to first degree murder was not established beyond reasonable doubt."   We do not deem it necessary to enlarge on the statement of facts.   The evidence is voluminous.   There is a sharp conflict between the evidence adduced by the state and that given by the defendant and the members of his family.   The case does present an unusual factual situation.   In addition to defendant's denial of guilt, the defense is that another person fired the fatal shot, and defendant's sister, Anna, testified that it was she who fired the shot.

The defendant has the right to have his guilt determined by the court as well as by the jury.   He has the right to have "the solemn opinion of the judge who tried the cause, after a careful hearing of all that may be alleged against its justice, that it ought to stand."   He also has "the right, upon writ of error, . . . to demand the deliberate opinion and judgment of this court upon the question whether his guilt was sufficiently proven."   *Parke v. State,* 204 Wis. 443, 444, 235 N. W. 775, and cases there cited.   The trial court's disposition of the motion after verdict to discharge defendant and in the alternative for a new trial manifests its approval of the verdict as returned by the jury and its solemn opinion as to the defendant's guilt.

This court has carefully considered all the evidence and all the facts and surrounding circumstances as disclosed by the evidence, and it is our deliberate opinion and judgment that defendant's guilt was sufficiently proven, and, if it were not for the errors to which reference will be hereinafter made, we would not interfere with the verdict and judgment of conviction.

The third assignment of error is that "the court erred in instructing the jury as to presumption of intent to kill." In this regard the instruction was as follows:

"You are instructed that the law presumes that every reasonable person intends all the natural, usual and probable consequences of his acts; and that when a person points a loaded gun, which the law says is a dangerous weapon, at a vital part of the body of another and fires, and the life of the person thus fired upon is taken in consequence of such act, then the law presumes that the natural and ordinary consequence of that act was intended, and hence that death was intended. Intent is not to be judged from the act alone, but is to be gathered, if at all, from the act and all surrounding circumstances and all the evidence in the case bearing thereon. It is not necessary in order to find intent that the intent be proved by direct and positive evidence. It may be inferred from all the credible evidence in the case if you are satisfied beyond a reasonable doubt of its existence. Proof of motive to commit a crime is not indispensable or essential to conviction, and the state is not required to prove motive on the part of the defendant in order to convict him if you are satisfied by the credible evidence beyond reasonable doubt of his guilt. The state charges the defendant with first degree murder. The defendant says he did not fire the fatal shot which killed Officer Schumacher. That is the primary issue in the case."

Defendant's counsel contends that this instruction does not state the rebuttable character of any presumption; that it makes no mention of any qualifications; that it assumes the gun was pointed at a vital part of the body; that the term

"intentionally points" is not used; and, for all that appears in the instruction, the aim may have been accidental and yet a conclusive presumption of guilt of first degree murder would follow.

In *Hedger v. State,* 144 Wis. 279, 303, 304, 128 N. W. 80, the court had occasion to consider an instruction as to presumption of intent to kill. The instruction there approved by this court contained the qualifying phrases which defendant's counsel contends should have been included in the instruction in the instant case. That is, in the *Hedger Case,* the instruction approved, in part, is as follows:

*"When there are no circumstances to prevent or rebut the presumption,* the law will presume that the unlawful act was intentional and malicious, and was prompted and determined on by the ordinary natural operations of the mind. *In the absence of evidence to the contrary,* he who takes the life of another by the infliction of a wound or some act naturally and probably calculated to produce death, is presumed to have intended that result and to be, guilty of murder at the common law, and murder in the first degree under our statute."

The instruction in the instant case as to presumption of intent, in part, is as follows:

"You are instructed that the law presumes that every reasonable person intends all the natural, usual and probable consequences of his acts; and that when a person points a loaded gun, which the law says is a dangerous weapon, at a vital part of the body of another and fires, and the life of the person thus fired upon is taken in consequence of such act, then the law presumes that the natural and ordinary consequence of that act was intended, and hence that death was intended," etc.

It will be noted that the qualifying clause, "When there are no circumstances to prevent or rebut the presumption," included in the instructions in the *Hedger Case,* is entirely omitted from the instruction in the instant case. The in-

struction in the instant case would naturally lead the jury to believe that the presumption of intent to kill was conclusive. In the *Hedger Case* the inference is referred to as existing in the absence of evidence to the contrary. The presumption is stated to be done away with by facts raising a reasonable doubt. In *Beauregard v. State,* 146 Wis. 280, 287, 131 N. W. 347, the following instruction was held prejudicial:

"In deciding whether the defendant is guilty of murder or of manslaughter, you will bear in mind that the law presumes that the person intended the consequences of his acts."

The court said regarding this instruction:

"There is very little, if any, justification for giving such an unguarded instruction as a warrant for finding the specific intent to kill a human being essential to the highest degree of criminal homicide. . . . The rule which the trial court improperly stated, is most safely and commonly phrased as suggested in *Cupps v. State,* 120 Wis. 504, 515, 97 N. W. 210, 98 N. W. 546, this way:

" '*In the absence of evidence to the contrary,* he who takes the life of another by the infliction of a wound or some act naturally and probably calculated to produce death, is presumed to have intended that result.' "

The instruction here complained of makes no mention of any qualifications, and we believe failure to do so must be held to be prejudicial error.

The fourth assignment of error is that "the court erred in ruling and instructing jury that the absence of search warrant had no bearing on case except as to credibility of officers." In this regard the court instructed:

"Much testimony has been received as to the presence of federal and state agents upon the premises where the defendant lived on the fatal night. Testimony concerning occurrences at the Yellow Cab garage, and of the looking into the buildings at the rear or east end of the premises by such agents *is of no importance and has no relevant bearing in the case,* excepting only as it may bear upon the credibility of

certain of the state's witnesses and as to whether, being upon said premises without a search warrant, there exists any motive or purpose on the part of such agents, who have been witnesses in the case, to fabricate a story or color their testimony. It appears in the case that none of these agents had a search warrant. This is not disputed. *You are instructed that that fact has no proper bearing upon the ultimate issue to be determined by you,* which is: 'Did the defendant, Charles Melli, kill Officer Schumacher, and if so, of what degree of homicide submitted to you is he guilty, if any?' "

Defendant's counsel contends that the ruling and instruction that the absence of search warrant had no bearing on the case except as to the credibility of the officers was prejudicial error. Counsel claims that such evidence was vital and important on the question of "heat of passion." Counsel further claims such evidence also bore on the issue of the defense of self, parents, or home, which the court excluded from the jury, having held such defenses inconsistent with defendant's denial of the shooting. We believe that the absence of a search warrant did have a bearing in the case other than in its relation to the credibility of certain of the state's witnesses. It had a bearing on the question of "heat of passion" as an element for the consideration of the jury in determining the degree of homicide, particularly in reference to second degree murder and third degree manslaughter. The defendant and other defense witnesses testified that the officers invaded their living apartment and, against the protest of the defendant and his demand that they produce a search warrant, actually searched the living quarters of the Melli family. Defendant testified that he at first thought they were officers, but that, when they failed to produce a search warrant, he changed his mind. They were all strangers to him. There is the further testimony that, while the officers were at the door which entered the living apartment, the defendant and his brother Tony went from room to room in an excited manner, and that a sister told them to "keep cool."

Following this occurrence upstairs, Officer Goike testified, in reference to seeing the defendant at or near the entrance to the downstairs, as follows:

"I saw the defendant come to this door. He was about a foot or a foot and a half inside the door when I first saw him. There was a light there. . . . He was dressed in trousers and his underwear. He didn't say anything. *He was awfully excited."*

The officers, of course, had no legal right to invade the family living quarters or other portion of said building for the purpose of making a search therein without a warrant. *Taylor v. United States,* 286 U. S. 1, 52 Sup. Ct. 466. While we may believe or disbelieve the testimony of the defendant and his witnesses as to the search in the living apartment, nevertheless, such facts and circumstances were testified to, and the jury had a right to consider the fact that the officers had no warrant authorizing a search of the premises.

The statute, sec. 340.03, defines murder in the second degree as follows:

"Such killing, when perpetrated by any act imminently dangerous to others and evincing a depraved mind, regardless of human life, without any premeditated design to effect the death of the person killed or of any human being, shall be murder in the second degree."

Sec. 340.18, Stats., defines manslaughter in the third degree as follows:

"Any person who shall kill another in the heat of passion without a design to effect death, by a dangerous weapon, in any case except such wherein the killing of another is herein declared to be justifiable or excusable, shall be deemed guilty of manslaughter in the third degree."

In *Johnson v. State,* 129 Wis. 146, 108 N. W. 55, the court said:

"We are constrained to approve the idea that the heat of passion which will reduce what would otherwise be murder to manslaughter in the third degree, and which is specified

inclusively or exclusively in the statutory definitions of other homicidal offenses, is such mental disturbance, caused by a reasonable, adequate provocation as would ordinarily so overcome and dominate or suspend the exercise of the judgment of an ordinary man as to render his mind for the time being deaf to the voice of reason; make him incapable of forming and executing that distinct intent to take human life essential to murder in the first degree, and to cause him, uncontrollably, to act from the impelling force of the disturbing cause, rather than from any real wickedness of heart or cruelty or recklessness of disposition."

*Ryan v. State,* 115 Wis. 488, 92 N. W. 271; *Carlone v. State,* 150 Wis. 38, 136 N. W. 153; 13 R. C. L. 786; *Balthazor v. State,* 207 Wis. 172, 183, 240 N. W. 776. .

We conclude that from all the evidence and circumstances as to the conduct of the officers as claimed by the defendant, including the absence of a search warrant, as bearing on the occasion for "heat of passion," it was prejudicial error to instruct that the absence of a search warrant had no bearing in the case other than as relating to the credibility of the officers. "Heat of passion" is one of the elements necessarily present in third degree manslaughter.

The sixth assignment of error relates to the court's ruling on the right of defendant's counsel to comment in his argument to the jury on the fact that Anna Melli, by her admission that she fired the shot which killed Officer Schumacher, subjected herself to criminal prosecution and that such admission affected her credibility as a witness. The court sustained the objection to such line of argument. We are of the opinion that, in view of the testimony given by Anna Melli, defendant's counsel had the right to comment upon such testimony as affecting her credibility.

Other than as indicated, we find no prejudicial error. The result of the foregoing is that the judgment must be reversed, and cause remanded for a new trial.

*By the Court.*—The judgment and sentence of the circuit court for Kenosha county is hereby vacated and set aside, and cause remanded for a new trial. The warden of the Wisconsin state prison is directed and ordered to remand the custody of the defendant Charles Melli to the sheriff of Kenosha county to be by him held until he shall be discharged or his custody changed by due course of law.