STATE, Respondent, v. CARLSON, Appellant.

*November 7—December 2, 1958.*

602

For the appellant there was a brief and oral argument by *Charles M. Hanratty* and *Kenneth J. Ehlenbach,* both of Milwaukee.

For the respondent there was a brief by the *Attorney General* and *William A. Platz* and *John H. Bowers,* assistant attorneys general, and *William J. McCauley,* district attorney of Milwaukee county, and oral argument by *Mr. Aladin A. DeBrozzo,* deputy district attorney, and *Mr. Platz.*

FAIRCHILD, J. Four questions are presented: (1) Was there sufficient proof of intent? (2) Were certain photographs merely cumulative and improperly received? (3) Was it prejudicial error to exclude testimony of Dr. Davis concerning the results of the electroencephalographic tests? (4) Could defendant properly be convicted of both arson and third-degree murder?

(1) *Proof of intent.* Sec. 943.02 (1) (a), Stats., provides for the punishment of anyone who "by means of fire, intentionally damages any building of another without his consent." Sec. 939.23 (3) provides in part: " 'Intentionally' means that the actor either has a purpose to do the thing or cause the result specified or believes that his act, if successful, will cause that result."

It is virtually conceded that Carlson's activity under the stairway caused the fire and the damage to the Haecker house. It is clear that the fire was a natural and probable consequence of acts which he admitted to the officers, *i.e.,* lighting a paper bag and holding a lighted candle to an inner tube until it began to burn. It is true that in all his statements and testimony, Carlson said he tried to extinguish the fire in the tube before leaving the scene and that upon the trial he testified that both the bag and the tube were ignited accidently as a result of innocent (even if negligent) acts. The jury was not bound to believe either of these statements. *State v. Kuenzli* (1932), 208 Wis. 340, 347, 242 N. W. 147. There were also several facts which might tend to discredit his statements. Among others: Carlson's running away, his disposal of the matches and candles, his return to the restaurant, and remaining there until the fire was discovered, and his failure to give the officers the explanation which he gave on the trial.

The law presumes that a person intends the natural and probable consequences of his own acts but the presumption may be rebutted. *State v. Vinson* (1955), 269 Wis. 305,

309e, 68 N. W. (2d) 712, 70 N. W. (2d) 1. Carlson, by his statements to the officers, furnished proofs of acts by him which caused the fire as a natural and probable consequence. At the trial he endeavored to rebut the presumption by ascribing an innocent purpose to his acts and by describing the acts somewhat differently from the way he described them to the officers. He failed to raise a reasonable doubt in the minds of the jurors.

The defendant also claims that the court did not correctly instruct the jury on the matter of intent. He points to no misstatement nor material omission. We have reviewed the portions of the instructions which dealt with this matter and find no error prejudicial to defendant. The court informed the jury of the presumption to which we have referred but limited it by saying, "when there are no circumstances to prevent or rebut the presumption." The court also told the jury: "Of course you may weigh on the question of such intent the sworn testimony . . . as to the statements against interest, if any, made by the defendant, and you may also weigh on such question of intent the defendant's testimony given on the trial." The court also instructed the jury on its duty to acquit if not satisfied beyond a reasonable doubt that defendant intentionally damaged the building by fire. The jury must be informed of the rebuttable character of the presumption, *Melli v. State* (1936), 220 Wis. 419, 265 N. W. 79, and the court did so.

(2) *Photographs.* The state offered 15 photographs of portions of the Haecker home showing the damage done by the fire, including several of the second-floor apartment where Mrs. Bonner's body had been found. They were received over objection and (except for one which bore markings about which there had been no testimony) were sent to the jury room when the jury retired for its deliberations. Defendant asserts that there was an abundance of testimony to prove the fire and the death without these pictures and that

the pictures may have caused the jury to find intent improperly because it was so impressed with the extent of the fire. The trial court found nothing "patently gruesome or that would inherently tend to shock the jury."

It is undoubtedly true that the existence of the fire, its concentration at the rear of the building, and the fact that it caused Mrs. Bonner's death were sufficiently established by testimony without pictures. Nevertheless, they were material evidence and the court did not abuse its discretion in receiving them.

(3) *Testimony concerning electroencephalograph tests.* The offer of Dr. Davis' testimony is described in the statement of facts. The only finding she stated which related specifically to defendant was that the tracing showed an organic abnormality in his brain. It appears that one of the reasons stated by the trial court for sustaining the objection was that the results of the test, standing alone without other medical testimony, would be of no probative value. We agree. Except for the finding just referred to, the testimony was in general terms indicating that tracings like defendant's are seen in individuals who experienced various diseases or injuries early in life, who had an emotional background of an unstable environment, and in whom the emotional factors produce disturbances of behavior which consist of irresistible impulses. No medical opinion was offered, based upon the tracing, the facts as to defendant's background and early life, and the circumstances of the alleged offense, as to defendant's mental capacity or condition at the time of the offense.

The court did give as a further reason for rejecting Dr. Davis' testimony that it appeared that she would attribute any misconduct to irresistible impulse, rather than lack of ability to distinguish between right and wrong, and only the latter is the test of insanity under Wisconsin law. While defendant's brief on appeal suggests that we must someday

broaden the so-called M'Naghten rule or right-wrong test for insanity, it also says, "The defendant did not raise the argument of the irresistible-impulse theory nor did he wish to advance such argument. His only contention was that the jury was entitled to weigh all the evidence; that certainly it was pertinent on the issue of defendant's capacity to form the requisite intent."

The offered testimony suggests no reason why defendant could not form an intent to burn a building nor does it tend to rebut the presumption that he intended the natural and probable consequences of his acts.

Although defendant has not urged us to review the rule that the test of insanity as a defense to a charge of crime is inability to distinguish between right and wrong or inability to know the nature and quality of one's acts, we have given some consideration to the subject. Some members of the court are of the opinion that this rule should be modified so that a defendant is to be found insane if an abnormal condition of the mind renders him incapable of conforming his conduct to that which he deems right. All members, however, agree that this question was not raised in the trial court, nor here, and should not be decided in this case. We are of the opinion, however, that if the offered testimony, together with other expert testimony, had sufficiently tended to prove that at the time of the offense defendant was subject to a compulsion or irresistible impulse by reason of the abnormality of his brain, the testimony should have been admitted. Even under the right-wrong test, no evidence should be excluded which reasonably tends to show the mental condition of the defendant at the time of the offense.

(4) *Separate convictions of arson and third-degree murder.* The attorney general suggests that defendant should not have been convicted of both arson and third-degree murder. We agree. Because the sentences were made concurrent, we are not aware of any way in which defendant can be injured

by this error, but for the purpose of clarifying the record, we reverse the judgment based on the separate conviction of arson.

Sec. 940.03, Stats., provides:

"Whoever in the course of committing or attempting to commit a felony causes the death of another human being as a natural and probable consequence of the commission of or attempt to commit the felony, may be imprisoned not more than fifteen years in excess of the maximum provided by law for the felony."

This statute entitled "Third-degree murder" provides for increase in the maximum penalty for the felony referred to, in this case, arson. See discussion in 1956 Wisconsin Law Review, 350, 370. Putting it in different words, third-degree murder is a combination of a felony or attempted felony, and the fact that in the commission or attempt, a death was caused. The information charging defendant with third-degree murder in effect charged the arson and alleged the causing of the death as an additional element affecting the maximum sentence; the verdict of guilty of third-degree murder in effect found the defendant guilty of arson and of the additional element of causing the death; upon such conviction the defendant was properly sentenced to imprisonment for not more than thirty years (fifteen, the maximum for the arson under sec. 943.02, plus fifteen, the additional number of years provided by sec. 940.03). There was no occasion for a separate information charging arson and if the two proceedings had been tried separately, jeopardy in the first would have been a defense in the second.

As suggested by the attorney general, ". . . the correct procedure would be in the first instance to bring but one single charge of third-degree murder and for the court to submit to the jury verdicts of third-degree murder, arson, and not guilty. The arson could properly be submitted to the jury because it is an included crime within the meaning of

sec. 939.66 (1) of the Criminal Code. But the jury should be instructed to sign but one verdict, so that if they found the defendant guilty of third-degree murder they would make no finding with respect to the separate form of verdict of arson. On the other hand if they found the defendant not guilty of third-degree murder they might still find him guilty of arson, if they found that he set the fire but that it did not cause the death."

*By the Court.*—Judgment upon conviction of third-degree murder (No. E–9712) affirmed; judgment upon conviction of arson (No. E–9711) reversed.

BROWN, J., took no part.