PAYNE, Plaintiff in error, V. STATE, Defendant in error.

*September 11—October 3, 1967.*

308

For the plaintiff in error there was a brief and oral argument by *George K. Whyte, Jr.,* of Milwaukee.

For the defendant in error the cause was argued by *E. Michael McCann,* assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Hugh R. O'Connell,* district attorney.

WILKIE, J. The sole issue in this case is whether the evidence presented at the trial is sufficient to prove the element of intent required for a conviction of first-degree murder.

Sec. 940.01 (1), Stats., defines a first-degree murderer as "Whoever causes the death of another human being with intent to kill that person." The phrase "intent to kill" is defined in sec. 940.01 (2) as meaning "the mental purpose to take the life of another human being."

The test employed in assessing the sufficiency of the evidence was recently stated in *Lock v. State* [1] as:

"We have said many times that when the question of the sufficiency of the evidence is presented on appeal in a criminal case the only question for this court is whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendants' guilt beyond a reasonable doubt. *State v. Johnson* (1960), 11 Wis. (2d) 130, 137, 104 N. W. (2d) 379; *State v. John* (1960), 11 Wis. (2d) 1, 103 N. W. (2d) 304; *Parke v. State* (1931), 204 Wis. 443, 235 N. W. 775; *State v. Stevens* (1965), 26 Wis. (2d) 451, 132 N. W. (2d) 502. This ultimate test is the same whether the trier of the facts is a court or a jury. *State v. Waters* (1965), 28 Wis. (2d) 148, 135 N. W. (2d) 768; *Gauthier v. State* (1965), 28 Wis. (2d) 412, 137 N. W. (2d) 101. Invariably the briefs and arguments on this issue point to what the trier of the facts could have found or what this court should determine. The test is not whether this court is convinced of the guilt of the defendant beyond a reasonable doubt but whether this court can conclude the trier of the facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true."

We have reviewed the record and are of the opinion that there is abundant credible evidence from which the jury could have concluded, beyond a reasonable doubt, that the defendant intended to kill the deceased.

---

[1] (1966), 31 Wis. 2d 110, 114, 142 N. W. 2d 183.

When Payne went home after Homann's attack, he was under no compulsion to return. When he decided to return to the tavern he took his shotgun with him. When he arrived at the scene the gun was unloaded and in its casing. If Payne had only wanted to frighten Homann he could have done so without putting a shell in the shotgun. If Payne was genuinely afraid of Homann he could have elected to act as a law-abiding citizen and summoned the police. According to Payne, all he wanted was his money and yet all the money that was at stake was the small amount of $1.63.

After the defendant created the confrontation he never backed down. Even if his claim that Homann was advancing on him is true, it is undisputed that Payne never attempted to extricate himself from the situation but merely held his ground and repeated his demand for the return of the money.

From across the street, and while in her bedroom, witness Elizabeth Zigan heard the argument that preceded the shooting. She testified that Homann asked the defendant, "What are you going to do with that?" and that Payne replied, "I am going to blow you in two." Defendant contends that Mrs. Zigan's testimony cannot be believed because Mrs. Homann testified that the defendant never said that he was going to blow her husband in two. But the record shows that Mrs. Homann was not present all the time at the scene of the killing. Thus, this declaration could well have been made while she was absent.

Witness Charles Johnson observed the shooting from across the street. He heard the deceased say, "You know what you will get if you shoot me," and the defendant reply, "Yes, I know, but look what you will get."

There is nothing incredible as a matter of law about the testimony of either of these witnesses.

Even without these statements, the attendant circumstances surrounding the shooting clearly indicate that Payne had an intent to kill. After losing a fight and $1.63 to the deceased the defendant went home and in about ten minutes came back to the tavern area with a lethal weapon. After returning to the area he loaded his shotgun and confronted the deceased and his wife. After a five-minute discussion he pointed his high-caliber weapon at the deceased's midsection and cooly and calmly pulled the trigger. There is sufficient credible evidence to support the conviction even without resorting to the presumption that "a person intends the natural and probable consequences of his own acts." [2] In the instant case the natural and probable consequences of Payne's act were that Homann would be killed.

*By the Court.*—Judgment and order affirmed.

---

[2] *State v. Carlson* (1958), 5 Wis. 2d 595, 604, 93 N. W. 2d 354.