LASTER, Plaintiff in error, v. STATE, Defendant in error.*

*No. State 80. Argued September 4, 1973.—Decided October 15, 1973.*
(Also reported in 211 N. W. 2d 13.)

* Motion for rehearing denied, without costs, November 27, 1973.

526

528

For the plaintiff in error there were briefs by *Howard G. Brown* and *Shellow & Shellow,* attorneys, and *Raymond H. Thoenig* of counsel, all of Milwaukee, and oral argument by *Mr. Brown.*

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HANLEY, J. The following issues are raised on this appeal:

1. Was the search incident to arrest of the defendant's residence and seizure of items therefrom illegal in that

the police had not procured an arrest warrant and did not have probable cause to arrest the defendant?

2. Did the trial court err in admitting testimony of a pretrial lineup because of a denial of counsel to defendant at that lineup and because said lineup was the fruit of an illegal arrest?

3. Did the trial court's refusal to grant requested instructions as to third-degree murder and endangering safety by conduct regardless of life constitute prejudicial error?

4. Did the trial court commit prejudicial error in failing to instruct the jury as to the evidentiary weight to be given a stipulation?

5. Was the defendant unconstitutionally denied his right to proceed pro se?

*Arrest warrant.*

The general rule as to this court's review of factual disputes heard and determined by the trial judge is that the findings of the trial court will not be upset unless they are against the clear weight and preponderance of the evidence. We hold that the trial court's finding that the police officer had a warrant at the time of the arrest was against the clear weight and preponderance of the evidence.

A warrant for arrest must be issued on a complaint found by a magistrate to state probable cause that a crime has been committed and that the accused committed the crime. Sec. 954.02, Stats. 1967. Thus, it is doubtful that the warrants for the arrest of defendant could have been in existence on October 12, 1969, at 12:15 p. m. when the complaints upon which the warrants were issued were drafted on October 13, 1969. While it could be argued that the dating of the complaints was due either to a typographical mistake or clerical error, several facts militate against this result.

First, Detective Beasley testified that since it was Sunday, there were no secretaries present and all typing had to be done by him. Under such circumstances it is hard to presume clerical error. Secondly, since all four complaints are dated October 13, 1969, it is extremely doubtful that there existed four typographical errors undetected by the numerous individuals who handled said complaints. Thus, this court is obliged to hold, based on the dating of the four complaints and the additional evidence as to the inability of either the police or the clerk of court's office to produce said warrants, that the arrest warrants did not exist.

*Probable cause.*

The trial court found that the officer ". . . did have probable cause to arrest the defendant . . . ." We agree.

In order to determine whether Detective Bayer had probable cause to arrest defendant, this court must consider the information which he possessed at the moment of arrest. Only if it can be concluded that the information possessed by Officer Bayer at the time of arrest was sufficient to permit him to reasonably conclude that the offense had been committed and that the defendant committed it can the arrest of the defendant be upheld.

Hearsay evidence may provide the basis upon which a determination of probable cause is made. *Draper v. United States* (1959), 358 U. S. 307, 79 Sup. Ct. 329, 3 L. Ed. 2d 327. However, if such hearsay evidence provides said basis, such evidence must be shown to be reliable and emanating from a credible source. *Spinelli v. United States* (1969), 393 U. S. 410, 89 Sup. Ct. 584, 21 L. Ed. 2d 637; *State v. Paszek* (1971), 50 Wis. 2d 619, 184 N. W. 2d 836. Since the basis upon which the presence of probable cause in this case hinges is the hearsay testimony of Lois Hale as relayed to Detective Bayer by

Officer Beasley these questions of reliability and credibility are of great importance.

It was testified to by Officer Beasley that he relayed the following information to Detective Bayer:

"Q. What did you state to Detective Bayer at that time?

"A. That Miss Hale did meet the complainant in this particular offense, Mr. Schultz, in a tavern on the east side; that they had made an arrangement for an illegal sexual act; they proceeded to an address in the 2400 block of North 10th Street;

"Q. What date did she say this all occurred, or did she?

"A. I cannot recall. This was immediately prior to the offense—whatever the date of the offense was—and would be the same date. Upon arriving in the 2400 block of North 10th Street, they walked down the west side of the alley.

"Q. And who was walking down the west side of the alley?

"A. The individual named by her as the defendant, we are talking about—Johnnie Laster—another individual by the name of Triplett and another individual by the name of Trent.

" . . .

"Q. (Mr. Tesch) Who was with her at the time?

"A. Mr. Schultz.

"Q. All right; and what further information did you give to Detective Bayer?

"A. That they approached him. All three subjects drew handguns.

"Q. Approached who?

"A. Approached Mr. Schultz, the complainant.

"Q. Donald Schultz?

"A. Yes, sir. They approached Mr. Schultz. They all drew handguns. They demanded money from Mr. Schultz, made him kneel to the ground, and while he was kneeling on the ground they beat and kicked him, took his wallet, his personal identification and money, and all three subjects fired shots at him while he was kneeling on the ground. Everyone then turned and ran.

" . . .

"*Q.* What did you tell him concerning the source of your information?

"*A.* I stated to him that I received this from Lois Hale, who was the girl in this particular offense, who the police department had been looking for since the offense itself."

From the above testimony, it is obvious that Lois Hale was an eyewitness to the crime and that Detective Bayer was so informed. Thus, it is doubtless that proof of the reliability of the manner in which the informant obtained her information has been sufficiently established. *State v. Knudson* (1971), 51 Wis. 2d 270, 187 N. W. 2d 321; *United States v. Harris* (1971), 403 U. S. 573, 91 Sup. Ct. 2075, 29 L. Ed. 2d 723.

Proof of the reliability and credibility of the informant is a more difficult task. Such is especially true in situations like this where the police have had no previous opportunity to judge the reliability of the witness. Since this was the initial contact the police had with the witness in her role as an "informer," testimony as to past "tips" and the resulting convictions is not possible. Likewise, it is not possible to cloak the witness with appearance of reliability under the "citizen-informer" [1] doctrine. It cannot be argued that Lois Hale who is herself directly involved in the criminal activity is acting "with an intent to aid police in law enforcement because of [her] concern for society or for [her] own safety." [2] Yet, it is this aforementioned involvement of Lois Hale in the criminal activity in question which lends credibility to her statement.

Lois Hale admitted that she was involved in the crime in her initial statement to the police. She stated that she had agreed to an illicit sexual act for value and implicated herself in the attempted murder and armed rob-

---

[1] *State v. Paszek, supra.*

[2] *Id.* at page 630.

bery of Donald Schultz. These declarations were against her own penal interests and as such have a greater probability of reliability. "Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search." *United States v. Harris, supra,* at page 583.

It is our opinion that the admission of criminal activity on the part of the declarant, Lois Hale, is imbued with sufficient credibility to support a finding of probable cause to arrest simply because such a statement is contrary to her own penal interest.

*The lineup.*

The defendant claims that the admission of testimony as to the pretrial lineup identification was error because he was denied counsel at the lineup and because the information which resulted from the lineup constituted the fruit of an illegal arrest. We do not agree.

The right to the presence of an attorney during a lineup identification has been held to attach only after the institution of adversary judicial criminal proceedings— the filing of a complaint or information.[3] Since the complaint was not issued till October 13, 1969, and since the lineup was held previous thereto—during the evening of October 12, 1969—it is clear that the right to an attorney had not yet attached.

It is likewise patent that had the right to the presence of an attorney attached in the case at bar, that the defendant knowingly and intelligently waived his right to the presence of an attorney. The trial court found that the defendant was sufficiently advised of his right to counsel at the lineup identification and understandingly and intelligently rejected that offer. Such a finding was based on the testimony of Detectives Thelen and Puhl-

[3] *State v. Taylor,* ante, p. 506, 210 N. W. 2d 873.

mann who stated that they advised the defendant of his "show-up" rights and that the defendant rejected this offer stating "Let's get it over with. I've got nothing to worry about." Based on the aforementioned testimony, we conclude that the trial court's finding that the defendant knowingly and intelligently waived his rights to the assistance of counsel at the identification lineup is not contrary to the great weight and clear preponderance of the evidence [4] and must be affirmed.

*Jury instructions.*

The defendant contends that the trial court committed prejudicial error in refusing to grant the requested instruction of third-degree murder, a lesser included charge of first-degree murder. We do not agree.

This court has continually held that ". . . to justify the submission for conviction of a lesser offense included in a greater crime there must be some reasonable ground in the evidence for a conviction of the lesser offense and an acquittal of the greater offense." *State v. Melvin* (1970), 49 Wis. 2d 246, 252, 181 N. W. 2d 490.

"An included offense charge is permissible when the evidence requires the jury to find a disputed factual element in the charged offense which is not required for a conviction of the included offense and the jury on the evidence might find the disputed fact either way." *State v. Melvin, supra,* at page 252.

Thus, what the defendant is arguing is that the element of intent necessary for conviction of first-degree murder and not necessary for conviction of third-degree murder is disputed and that the jury on the evidence might find the disputed element of the crime either way.

Counsel for the defendant states that there is reasonable grounds upon which the jury could find defendant

[4] *See State v. Parker* (1972), 55 Wis. 2d 131, 197 N. W. 2d 742.

not guilty of first-degree murder (*i.e.,* failure to find intent) but guilty of third-degree murder. The basis for his argument is simply that since a felony (armed robbery) was about to be committed or was in the process of commission, any death which resulted is necessarily murder in the third-degree. We think this goes too far. The mere fact that the accused was fortuitous enough to be committing a felony at the time he caused the death of a human being with the intent so to do is not enough to justify an instruction of third-degree murder.

A review of the evidence on the issue of intent leads us to conclude, as did the trial court, that there is no reasonable basis for finding the defendant lacked the intent to murder Paul Warmuth. Likewise, it cannot be successfully asserted that there are any reasonable grounds on which a jury could infer that the defendant lacked any design to effect the death of Paul Warmuth. The defendant entered the premises, pointed the weapon at the deceased and calmly pulled the trigger. The law presumes that a person intends the natural and probable consequences of his acts.[5] Based on this record, we find no basis upon which an instruction as to third-degree murder should have been given.

Likewise, we find no error in the trial court's refusal to grant an instruction in Case No. G–9938 on endangering safety by conduct regardless of life. The court found that there could be no reasonable view of the evidence which would leave a reasonable doubt as to that particular element (intent) of the greater crime (attempted murder) but not included in the lesser included crime (endangering safety by conduct regardless of life). The trial court's holding as to efficacy of instructing the jury

[5] *Gelhaar v. State* (1969), 41 Wis. 2d 230, 243, 163 N. W. 2d 609; *State v. Carlson* (1958), 5 Wis. 2d 595, 604, 93 N. W. 2d 354.

as to a lesser included crime is consistent with the court's view.

" ' . . . if the evidence, in one reasonable view, would suffice to prove guilt of the higher degree beyond a reasonable doubt, and if, under a different, but reasonable view, the evidence would suffice to prove guilt of the lower degree beyond a reasonable doubt, but leave a reasonable doubt as to some element included in the higher degree but not in the lower, the court should, if requested, submit the lower degree as well as the higher. . . . ' " *State v. Bergenthal* (1970), 47 Wis. 2d 668, 674, 178 N. W. 2d 16.

Our review of the evidence on the issue of intent leads us to conclude likewise that there is no reasonable basis for finding the defendant lacked the intent to kill Donald Schultz. Schultz was robbed, brutally and repeatedly kicked in the face while being forced to assume a kneeling position and, when trying to defend himself, held and shot twice in the head, both shots striking Schultz immediately above his right eyebrow. For the trial court to instruct the jury on endangering safety by conduct regardless of life—in effect finding that under a reasonable view of the evidence a jury may find reasonable doubt as to the issue of intent—under such facts would be error.

*Instruction on stipulation.*

The defendant argues the trial court committed prejudicial error in failing to instruct the jury on the evidentiary weight to be given a stipulation entered into by the state and the defendant. This stipulation was to the effect that if Officer Beasley were called as a witness, he would testify that he found property of Donald Schultz in an alley after the robbery occurred. This property was introduced as evidence by the state.

The record fails to disclose any request on the part of the defendant to instruct that the stipulation was not a recitation of undisputed facts. Likewise, the record is

void of any objection by the defendant to the instruction given. Absent a request made prior to the rendition of the verdict, the objection has long since been waived. *Kimmons v. State* (1971), 51 Wis. 2d 266, 268, 186 N. W. 2d 308.

*Denial of right to proceed pro se.*

During the trial of Cases G–9940 and G–9941, the defendant objected to his present court-appointed counsel claiming that he was being railroaded by said counsel. On appeal, the defendant claimed that this outburst was, in effect, a request to continue pro se. Such a claim is baseless. The record rather indicates that after the defendant was admonished by the court as to such disruptive behavior he made no additional statements concerning counsel. In fact, the defendant actively co-operated with court-appointed counsel throughout the remainder of the trial.

While the defendant has a constitutional right to the assistance of counsel,[6] he, likewise, has the constitutional right to proceed without counsel.[7] He does not have the right, however, to individually dispense with court-appointed counsel.[8]

If the defendant desires to proceed pro se he must so indicate it. With indication, the court could then determine the merits of continuing court-appointed counsel or permit the defendant to continue pro se.

*By the Court.*—Judgments and orders affirmed.

[6] *State v. Scarbrough* (1972), 55 Wis. 2d 181, 186, 197 N. W. 2d 790.

[7] *Browne v. State* (1964), 24 Wis. 2d 491, 129 N. W. 2d 175.

[8] *State v. Johnson* (1971), 50 Wis. 2d 280, 184 N. W. 2d 107.