ADAMS, Plaintiff in error, v. STATE, Defendant in error.

Court of Appeals

*No. 78–832–CR.  Argued September 19, 1979.—
Decided November 20, 1979.*
(Also reported in — N.W. —.)

For the Plaintiff in Error the cause was submitted on the brief of *Richard L. Cates,* state public defender and *Melvin F. Greenberg,* assistant state public defender, with a supplemental brief by *James R. Glover* of *Shellow & Shellow* of Milwaukee. Oral argument was presented by *James R. Glover.*

For the Defendant in Error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general and *Chris C. Heikenen,* assistant attorney general with oral argument by *Chris C. Heikenen.*

Before Voss, P.J., Brown and Bode, J.J.

BROWN, J. This is an appeal from an attempted first-degree murder conviction.[1] Defendant's sole claim

---

[1] On September 9, 1977, the defendant was found guilty of armed robbery, contrary to sec. 943.32(1)(b) and (2), Stats., attempted murder, contrary to secs. 940.01(1) and 939.32(1), Stats., and operating a motor vehicle without owner's consent, contrary to sec. 943.23, Stats. He was sentenced to an indeter-

on appeal is that the presumption instruction to the jury, relating to the element of intent, was unconstitutional in that it shifted the burden of proof to the defendant, it invaded the fact-finding function of the jury, and it was an irrational presumption. Thus, it violated the fourteenth amendment to the constitution. The instruction given and objected to at trial was Wis J I—Criminal, Part II, 1105, which states:

When there are no circumstances to prevent or rebut the presumption, the law presumes that a reasonable person intends all the natural, probable and usual consequences of his deliberate acts. If one person assaults another violently with a dangerous weapon, likely to kill, then when there are no circumstances to prevent or rebut the presumption, the legal and natural presumption is that death was intended.

We agree with the defendant that the effect of this instruction shifts the burden of proof to the defendant and, thereby, relieves the State of proving the element of intent beyond a reasonable doubt.

It is true that Wis J I—Criminal, Part II, 1105, has been specifically approved by our supreme court. *See Fells v. State,* 65 Wis.2d 525, 534, 223 N.W.2d 507, 512 (1974); *Austin v. State,* 52 Wis.2d 716, 721, 190 N.W.2d 887, 890 (1971). It is also true that the natural and probable consequences presumption in the instruction has been held to be constitutional in the face of a challenge that it violated the defendant's constitutional due process right to be presumed innocent. *State v. Vinson,* 269 Wis. 305, 68 N.W.2d 712, 70 N.W.2d 1 (1955). The constitutionality of the Wis J I—Criminal, Part II, 1105, presumption has not, however, been authoritatively decided by the Wisconsin Supreme Court since *Mullaney v.*

minate term of not more than five (5) years on the armed robbery charge, twelve (12) years on the attempted murder charge and one (1) year on the operating a motor vehicle without owner's consent charge, all to run consecutively.

*Wilbur,* 421 U.S. 684 (1975). In *Mullaney,* the United States Supreme Court held that a presumption which shifts the burden of proof to the defendant on an element of the offense was unconstitutional under the due process clause of the fourteenth amendment. The question that remained after *Mullaney* was what kind of presumption or inference shifted the burden of proof to the defendant. In two recent cases, *Sandstrom v. Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed.2d 39 (1979), and *Ulster County Court v. Allen,* 442 U.S. 140, 99 S. Ct. 2213, 60 L. Ed.2d 777 (1979), the United States Supreme Court has more fully explained the permissible limits of inferences and presumptions. Until these two cases had been decided, the terms "presumption" and "inference" were the object of confusion and misunderstanding and were, as one court put it, a "semanticist's nightmare." *State v. Pendry,* 227 N.E.2d 210, 221 (W. Va. 1976). *Ulster County Court* and *Sandstrom* now enable us to properly categorize the presumptive instructions used in Wisconsin in order to determine their constitutionality.[2]

Before categorizing the presumptions and inferences, however, it is important to understand the function presumptions and inferences play in a trial.

In our legal system, a defendant is presumed innocent until the State has proven him guilty beyond a reasonable doubt. The State, thus, has the burden of proving every element of the offense charged by competent proof

[2] After *Ulster County Court* and *Sandstrom* were decided by the United States Supreme Court, this court requested certification of this case to the Wisconsin Supreme Court. The request was denied. Since our court and the Wisconsin Supreme Court are bound by United States Supreme Cóurt decisions, we are compelled to decide this case on the basis of the law declared by the United States Supreme Court in *Mullaney, Ulster County Court* and *Sandstrom.*

beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970). However, oftentimes it is virtually impossible for the State to prove a necessary fact or element by direct evidence. One such fact is the defendant's intent at the time a crime is committed. In order to assist the jury in determining whether the State has met its burden in proving these types of facts, the law created presumptions and inferences. A presumption or an inference is no more than a process of deductive reasoning whereby the jury may find that one fact exists from the proof of other facts. As stated in Justice Powell's dissent in *Ulster County Court v. Allen, supra* at 168, 169, 99 S. Ct. at 2230, 60 L. Ed.2d at 799:

> In the criminal law presumptions are used to encourage the jury to find certain facts, with respect to which no direct evidence is presented, solely because other facts have been proved. . . . The purpose of such presumptions is plain: Like certain other jury instructions, they provide guidance for jurors' thinking in considering the evidence laid before them. Once in the juryroom, jurors necessarily draw inferences from the evidence—both direct and circumstantial. Through the use of presumptions, certain inferences are commended to the attention of jurors by legislatures or courts. [Footnote omitted.] [Citations omitted.]

Thus, the courts and the legislatures have created what are now called legal presumptions and inferences. These presumptions and inferences fall into various categories. We will now turn to the various presumptions and inferences as defined by the United States Supreme Court.

## CATEGORIES OF PRESUMPTIONS

There are two basic categories of presumptions: permissive and mandatory. A permissive presumption, more commonly called a permissive inference, "allows—but

does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one . . . ." *Ulster County Court v. Allen, supra* at 157, 99 S. Ct. at 2224, 60 L. Ed.2d at 792. It "leaves the trier of fact free to credit or reject the inference . . . ." *Ulster County Court, supra.* The inference "could be ignored by the jury even if there was no affirmative proof offered by defendants in rebuttal." (Footnote omitted.) *Ulster County Court, supra* at 161, 99 S. Ct. at 2226, 60 L. Ed.2d at 794.

The second category of presumptions is called a mandatory presumption. The United States Supreme Court has divided this type of presumption into two subcategories. Presumptions which cannot be overcome by evidence adduced by the other party (the defendant in this type of case) are referred to as "conclusive" presumptions. *Sandstrom v. Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed.2d 39; *United States v. United States Gypsum Co.,* 438 U.S. 422 (1978) ; *Morissette v. United States,* 342 U.S. 246 (1952). A conclusive presumption on an element of the crime cannot be rebutted in any way. The fact finder must accept the presumption as the proof of the element.

The second subcategory of mandatory presumptions are called rebuttable presumptions. Rebuttable presumptions are presumptions that can be overcome by evidence adduced by the defendant. When a rebuttable presumption is used, a burden is then shifted to the defendant to rebut this presumption.

However, rebuttable presumptions are further divided into two more categories: rebuttable presumptions that shift the burden of production, and rebuttable presumptions that shift the burden of persuasion or proof. A rebuttable presumption which shifts the burden of production requires the defendant to produce *some* evidence to overcome the presumption. If *any* evidence contrary to the presumed fact is introduced by the defendant, the

presumption then disappears. The State must then prove beyond a reasonable doubt the otherwise presumed fact without the aid of a presumption.

On the other hand, where the presumption places on the defendant the burden of convincing the trier of fact that the presumed fact is not true, the presumption has then shifted the "burden of persuasion" to the defendant. *Sandstrom v. Montana, supra; Ulster County Court v. Allen, supra; Mullaney v. Wilbur, supra.* When the "burden of persuasion" has been shifted, the defendant must produce evidence to overcome the presumption. The quantum of evidence the defendant may be required to present in order to overcome the presumption may be anything from a preponderance of the evidence, to clear and convincing evidence, to evidence beyond a reasonable doubt.

Having defined the categories of presumptions, we next turn to which of the presumptions are constitutional.

## CONSTITUTIONALITY OF THE CATEGORIES OF PRESUMPTIONS

### I.  Permissive Inferences

Because the permissive inference leaves the trier of fact free to accept or reject the inference or inferred fact, it does not invade the province of the jury. The jury may decide for itself whether the inference should be drawn. Further, a permissive inference does not place any burden on the defendant to produce any evidence, prove any fact or disprove any fact. To that extent, it does not relieve the State of its constitutional duty to prove every element of the offense beyond a reasonable doubt. However, a permissive inference may be constitutionally infirm if there is not rational connection between the proven fact and the inferred fact.

A permissive inference passes constitutional muster if "it can at least be said with substantial assurance that the presumed [inferred] fact is more likely than not to flow from the proved fact on which it is made to depend." *Leary v. United States,* 395 U.S. 6, 36 (1969). If the inference adduced does not follow from the facts proven in light of present day experience, the permissive inference violates due process. It curtails the fact finder's freedom to assess the evidence independently. It also permits the fact finder to find the defendant guilty when there is no rational basis for the conclusion reached by the jury.

## II. Mandatory Presumption

The due process clause of the Fourteenth Amendment of the United States Constitution requires that the prosecution prove beyond a reasonable doubt, "every fact necessary to constitute the crime . . . charged." *In re Winship, supra* at 364. So, any mandatory presumption which relieves the prosecution of its burden to prove an element of the crime is unconstitutional in every case.

A conclusive presumption is, therefore, unconstitutional in every case. Conclusive presumptions are, "an irrebuttable direction by the court to find intent once convinced of the facts triggering the presumption." *Sandstrom v. Montana, supra* at 517, 99 S. Ct. at 2456, 61 L. Ed.2d at 47. The effect of a conclusive presumption on the element of the offense is to substitute the proven fact for that element. Conclusive presumptions on the element of the offense operate as a directed verdict with respect to that element. They deprive the defendant of his right to a trial by jury. *Sandstrom v.*

*Montana, supra* at 524, 99 S. Ct. at 2459, 61 L. Ed.2d at 50–51; *United States v. United States Gypsum Co., supra* at 435, 446; *Morissette v. United States, supra* at 274–75; *Melli v. State,* 220 Wis. 419, 265 N.W. 79 (1936). Since conclusive presumptions permit the prosecution to substitute a proven fact for proof of an element of the offense, they relieve the State of the burden of proving all elements of the offense beyond a reasonable doubt. *Sandstrom v. Montana, supra; United States v. United States Gypsum Co., supra.*

Mandatory presumptions which shift the "burden of persuasion" are also unconstitutional in every case. When the "burden of persuasion" is shifted, the prosecution is relieved of its burden of proving an element of the offense beyond a reasonable doubt. Relieving the State of this burden violates due process. *Sandstrom v. Montana, supra; Patterson v. New York,* 432 U.S. 197, 214–15 (1977); *Mullaney v. Wilbur,* 421 U.S. 684, 703–04 (1975).

Rebuttable presumptions which merely shift the burden of production, however, are not unconstitutional in every case. Since the "burden of persuasion" is not shifted, the State is not necessarily relieved of its burden of proving every element beyond a reasonable doubt. Therefore, rebuttable presumptions which merely shift the "burden of production" have a test similar to the permissive inference; that is, it must be determined whether or not the effect of the instruction is to "undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." *Ulster County Court v. Allen, supra* at 156, 99 S. Ct. at 2224, 60 L. Ed.2d at 791. Just as in permissive inferences, there must be a rational connection between the fact proven and the fact presumed. *See United States v. Romano,* 382 U.S. 136

■

(1965) ; *United States v. Gainey*, 380 U.S. 63 (1965) ; *Tot v. United States*, 319 U.S. 463 (1943).

## CATEGORIZATION OF THE WISCONSIN INSTRUCTION

■

In order for a device to pass constitutional muster, it must be presented in such a manner that the jury is fully apprised of their option to reject its application. This "determination requires careful attention to the words actually spoken to the jury, . . . for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror *could* have interpreted the instruction." (Emphasis added.) *Sandstrom v. Montana, supra* at 514, 99 S. Ct. at 2454, 61 L. Ed.2d at 45. Therefore, if it is possible that a reasonable juror could have given the instruction two different interpretations, then we must assume the worst. We must assume that the jury interpreted the instruction in a light most damaging to the defendant. If it is possible that a reasonable juror could have interpreted the language of the instruction as either conclusive or rebuttable, we must assume the jury considered it to be conclusive. Even if we conclude that it is not conclusive, then if the jury could have interpreted the presumption to be a rebuttable presumption which shifted the "burden of persuasion" rather than the "burden of production," the presumption instruction must be treated as a mandatory presumption shifting the "burden of persuasion." Only if no reasonable juror could have given a more compulsory interpretation will we treat the presumption instruction as a permissive inference.

■

The court, in this case, instructed the jury that the "natural and probable" presumption was something the

"law" presumes, and that the "dangerous weapon" presumption was a "legal" and "natural" presumption. They were also instructed that they must accept the "law," as given in the trial court's charge. The trial court did not instruct the jury that the presumptions were only part of the prosecution's case and could only be used in some very narrow circumstances as the Court did in *Ulster County Court.* The trial court also did not indicate to the jury that the presumption was merely permissive as was done in *Ulster County Court.* Finally, the trial court did not tell the jury that the presumption could be ignored even if the defendant offered no evidence in rebuttal as was the case in *Ulster County Court.* The *Sandstrom* instructions were not unlike the Wisconsin instruction. The *Sandstrom* court noted that the jurors in that case were told:

[T]he law presumes that a person intends the ordinary consequences of his voluntary acts.

The Court went on to state what the jurors were *not* told:

They were not told that they had a choice, or that they might infer that conclusion; they were told only that the law presumed it. It is clear that a reasonable juror could easily have viewed such an instruction as mandatory. [Citations omitted.] *Sandstrom, supra* at 515, 99 S. Ct. at 2454, 61 L. Ed.2d at 45.

As in *Sandstrom,* the trial court in this case did not tell the jury they might infer that conclusion; they were only told that the law presumed it. It is clear that a reasonable juror could have easily viewed the Wisconsin instruction as mandatory. The instruction, in this case, is not distinguishable in any significant way from the instruction in *Sandstrom.*

The Court in *Sandstrom* held that a juror in that case could have concluded that the instruction was either a

conclusive presumption or a mandatory rebuttable presumption. We do not believe, however, that a reasonable juror could have concluded that the presumption given in this case was conclusive. The instruction in this case was qualified with the phrase "when there are no circumstances to *prevent* or *rebut* the presumption." (Emphasis added.) We believe it is clear that a reasonable juror would have interpreted this language as allowing for the presumptions to be rebuttable. We, therefore, hold that the Wisconsin presumption, although mandatory, is rebuttable.

Next, we consider whether the Wisconsin mandatory rebuttable presumption is one which shifts the "burden of persuasion" as opposed to one which shifts the "burden of production." In concluding that it shifts the "burden of persuasion," we, again, use the *Sandstrom* guide. Since it is possible that a reasonable juror might have interpreted the presumption of intent instructions as shifting the "burden of persuasion" to the defendant rather than the "burden of production," then it is an instruction which does *indeed* shift the "burden of persuasion." The trial court did not inform the jury as to what evidence and how much evidence was required to overcome the presumption. Had the jury been informed that if the defendant offered *some* evidence contrary to the presumed fact, and the presumption would disappear, then we could say that the presumption was one which merely shifted the "burden of production." However, since the instructions left the jury to their own devices to determine what standard of proof should be used and to determine whether the circumstances were sufficient to prevent or rebut the presumption, the jury may have interpreted the instruction to require the defendant to disprove the fact presumed. It, therefore, shifted the "burden of persuasion" and was unconstitu-

tional under *Sandstrom v. Montana* and *Mullaney v. Wilbur*.

## HARMLESS ERROR

The Wisconsin presumption had the effect of relieving the State of the burden of proving intent to kill beyond a reasonable doubt. Obviously, the effect is harmful to the defendant. Since the error is of constitutional dimension, we must consider whether it is harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18 (1967).[3] We conclude that the error was not harmless beyond a reasonable doubt.

A city of Racine police officer was directed to check for a suspect vehicle as part of an armed robbery investigation. He noticed the suspect vehicle turn into a driveway and also noticed that the license plates of that particular vehicle matched the license plates of the suspect automobile he was looking for.

The officer pulled up to the suspect vehicle and exited from his police car. He told the three occupants of the suspect vehicle to exit with their hands up. The defendant exited the automobile with his hands somewhat to-

---

[3] There is some question as to whether instructions which shift the burden of proof can ever be considered harmless. Defendant claims that errors of this sort are never harmless. He cites *Jackson v. Virginia*, — U.S. —, 99 S. Ct. 2781, 61 L. Ed.2d 560 (1979), *Cool v. United States*, 409 U.S. 100 (1972), *United Brotherhood of Carpenters v. United States*, 330 U.S. 395 (1947), *Bollenbach v. United States*, 326 U.S. 607 (1946), in support of this claim. Because we conclude that the error in this case was not harmless beyond a reasonable doubt and because we note that the Court in *Sandstrom* remanded the case back to the Montana Supreme Court for a determination as to whether or not there was harmless error, without deciding whether such an error is ever harmless, we also decline to answer the question.

gether at his chest area. The defendant was holding a gun with his thumb through the trigger guard.

What happens next is in dispute. The police officer testified that he heard the defendant make a statement after getting out of the car to the effect that, "this is for you . . . ." The officer then saw an orange flash and heard a shot. The officer then testified he went for cover behind a utility pole and heard two more shots being fired. He then returned the fire shooting four times at the defendant. The defendant eventually gave up.

The defendant testified that as he got out of the car he had his hands up, and that he was going to the car pursuant to the officer's directions. Because he was holding a gun above his head, the officer panicked. Without provocation, the officer fired his gun at the defendant shooting the defendant in the ankle. The defendant testified he then fell backwards and crawled behind the suspect vehicle to hide. He further testified that, after he was shot, he fired approximately three shots over the trunk of his automobile trying to scare off the police officer and keep the police officer from killing him. He testified he was firing up in the air, and that his shots were a result of fear and trepidation. The officer was not shot.

It is clear there was a substantial question presented as to defendant's intent to kill. We note that the only evidence of the defendant's intent, other than the fact that he fired the shots, was the police officer's testimony that he heard the defendant make an affirmative statement to the effect that, "this is for you . . . ." The first time the officer made a statement that the defendant said, "this is for you" was at trial. It was not in his police report nor was it in his testimony at the preliminary hearing. None of the other witnesses present at the

time of the shooting testified to hearing such a statement.

The trial judge felt that there was a question of intent. At the defendant's request, he instructed the jury on the lesser included offense of endangering safety. The prosecutor also apparently believed there was a substantial question as to the defendant's intent. His questions both on direct and on cross-examination reveal that he was mainly concerned with trying to convince the jury that the defendant committed a purposeful action, not an action of desperation and panic in which he thought his life was in danger. The testimony reveals that the issue, indeed practically the only issue in this case, was whether or not the defendant intended to kill. Further, the prosecutor's objection to the instruction on endangering safety was based only on his theory that endangering safety was not a lesser included offense of attempted murder. He never claimed that intent was not a substantial issue in the case. Since intent was a substantial issue in the case and the required element of attempted first-degree murder, we cannot say that the giving of the instruction was harmless beyond a reasonable doubt.

The State also argues that a single instruction to a jury may not be judged in artificial isolation but must be viewed in a context of the overall instructions. The State claims that the question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.

The State concludes that, even if the challenged instruction amounts to error, the entire instructions must be considered and, considering the instructions as a whole, the error is harmless.

The State points out that the instructions did require the jury to find specific intent to kill. Further, the jury

was instructed that they had to find the defendant guilty beyond a reasonable doubt. Additionally, the jury was informed that the defendant did not have to prove his innocence, and that the defendant was presumed innocent throughout the trial. All of these instructions, the State says, taken together show that the State was not relieved of the burden of proving intent beyond a reasonable doubt, and the instructions as a whole properly advised the jury of its duty under the law.

We disagree with the State's argument. The same argument was advanced in *Sandstrom v. Montana*. The Court dispatched the argument in a footnote as follows:

The potential for these interpretations of the presumption was not removed by the other instructions given at the trial. It is true that the jury was instructed generally that the accused was presumed innocent until proven guilty, and that the State had the burden of proving beyond a reasonable doubt, that the defendant caused the death of the deceased purposely or knowingly. . . . But this is not rhetorically inconsistent with a conclusive or burden-shifting presumption. The jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied. For example, if the presumption were viewed as conclusive, the jury could have believed that although intent must be proven beyond a reasonable doubt, proof of the voluntary slaying and its ordinary consequences constituted proof of intent beyond a reasonable doubt. *Cf. Mullaney v. Wilbur*, 421 U.S. 684, 703 n. 31, 44 L. Ed.2d 508, 95 S. Ct. 1881 (1975) ("These procedural devices require (in the case of a presumption) . . . the trier of fact to conclude that the prosecution has met its burden of proof with respect to the presumed . . . fact by having satisfactorily established other facts."). [Citations omitted.] *Sandstrom v. Montana, supra* note 7, at 519, 99 S. Ct. note 7, at 2456, 61 L. Ed.2d note 7, at 47.

We believe that the Court in *Sandstrom* has sufficiently decided and set aside the argument that other instruc-

tions given at trial render the diseased instruction harmless. Using the *Sandstrom* rationale, the instructions here, when read as a whole, did not clearly convey to the jury the concept of permissiveness in the application of the presumption.

## THE EFFECT OF *GENOVA V. STATE*

Finally, the State contends that this case is governed by *Genova v. State,* 91 Wis.2d 595, 283 N.W.2d 483 (Ct. App. 1979). In *Genova,* our court held that the natural and probable consequences presumption in a theft statute was constitutional since it was a permissive inference and was not irrational. This argument need not detain us long. The court in *Genova* specifically noted that the instruction given in this case was more perilous than the instruction in *Genova.*

*By the Court.*—Judgment and order reversed and caused remanded for a new trial.