TAYLOR, Plaintiff in error, v. STATE, Defendant in error.

*No. State 24.  Argued September 15, 1971.—Decided October 5, 1971.*
(Also reported in 190 N. W. 2d 208.)

454

For the plaintiff in error there was a brief and oral argument by *Francis J. Demet* of Milwaukee.

For the defendant in error the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, and *William A. Platz,* assistant attorney general.

BEILFUSS, J. From the evidence offered by the state, the following facts appear:

On November 4, 1970, the defendant, Taylor, and Willie Fred Williams, entered the Bunde & Upmeyer Jewelry store in the city of Milwaukee at about 3:30 to 3:45 p. m.

Taylor asked to see an Omega watch that had a wholesale value of about $100, and Williams asked to see a Bulova watch that had a wholesale value of about $200. Dean Manley, one of the owners of the business, took the watches from the window and placed them on a sales counter so Taylor and Williams could examine them. Taylor picked up the Bulova watch, said "thank you," and ran out of the door. Manley chased him, caught his arm but lost his grip and Taylor ran down the street. At this time Williams came out of the store with the other watch in hand. Manley tackled Williams, brought him back into the store and called the police. The police came to the store shortly thereafter and arrested Williams. After questioning both Manley and Williams, the

police radioed a description of the other thief to all police cars on duty. Within an hour a police officer saw a man who fit the description given. It was Taylor and, as the police approached, he started to run but was caught and arrested.

The co-owner of the store, Simmie Doss, was in the store at the time of the theft and observed the activities of Taylor and Williams. He positively identified Taylor in court as one of the thieves and otherwise corroborated the testimony of Manley.

Taylor testified on his own behalf and denied being in the store or knowing Williams. He, by way of alibi, testified he was at his lawyer's office at the time of the theft. The evidence established that he was at his lawyer's office that afternoon (in the vicinity of the jewelry store), but he did not establish to the jury's satisfaction that he was in the law office at the time of the theft.

The sole issue before us is whether the trial court abused its discretion in refusing to grant the defendant's motion for mistrial and his motion for a new trial because of alleged prosecutorial misconduct.

The defendant contends that on four occasions the prosecutor engaged in improper conduct which prejudiced the defendant's case to the extent that he was denied a fair trial guaranteed by constitutional due process.

We have carefully examined the record as to the incidents alleged to be misconduct and conclude not only that the court did not abuse its discretion in failing to grant a mistrial or a new trial, but that the conduct of the prosecutor, under the circumstances of this case, cannot be classified as misconduct or improper prosecutorial conduct.

The arresting officer, James Dekker, was asked what he had found on the defendant at the time of arrest. The officer replied that he had found two watches in the defendant's pocket. (These watches were not taken

from the jewelry store in question.) Defendant's counsel objected to the testimony as immaterial and the objection was sustained.

Later defendant was asked by the prosecutor if he possessed more than one watch at the time of his arrest. Before defendant could answer, the defense counsel objected and the objection was sustained. This sequence of events is the incident that defendant contends is prejudicial error. After the evidence had been fully presented, the trial court instructed the jury to disregard questions to which objection had been sustained. The trial court further instructed the jury to draw no inferences, nor to speculate on any possible answers, nor imply any facts from such questions.

The general rule is that the asking of an improper question which is not answered is not ground for reversal.[1] This is especially true when the trial court instructs the jury to disregard such questions and to draw no inferences from them.[2] Such an instruction is presumed to efface any possible prejudice which may have resulted from the asking of the question.[3]

It cannot be said, from the record before us, that the jury disregarded the trial court's instruction.

One other factor also militates against the conclusion that prejudicial misconduct resulted from the asking of the question.

The record shows that the prosecutor in his opening statement made a reference to the two watches found in defendant's possession. Defense counsel in his opening statement specifically admitted that Taylor had had two watches in his possession at the time of his arrest. Defense counsel told the jury that the possession of two watches was not unusual for a man like defendant. Even

[1] 24B C. J. S., *Criminal Law*, pages 5, 6, sec. 1914 (1).

[2] *Id.*

[3] *Id.* at page 89, sec. 1915 (8).

if there were error with respect to the asking of the question, no reversal is warranted when the defense had previously brought out the facts alleged to be prejudicial.[4]

The second alleged error is the incident where the prosecutor asked Dekker to examine two exhibits which had been previously marked for identification. The exhibits were two black boxes, each containing a watch. (Again these were not watches involved in the theft in question.) The contents of the boxes were not shown to the jury. Before Exhibit 1 could be identified, the defendant objected. The objection was sustained.

The mere proffering of improper evidence ordinarily will not justify an order declaring a mistrial. Here, the trial court also instructed the jury not to consider the exhibits objected to and any possible error involved in the offering of the watches in their boxes is effaced by the jury instructions given by the court.[5]

Defendant urges that the calling of Dr. Leo Weinshel substantially prejudiced his case. The record shows that Dr. Weinshel was called to the witness stand out of order. At that point, before any testimony was given, defense counsel stated that he had some reservation "as to whether I should not object to his testimony." The court then held a conference in chambers without the presence of the jury. It was decided that Dr. Weinshel would be excused without giving any testimony. In front of the jury Dr. Weinshel was excused from testifying. There is no evidence in the record that shows any possible prejudice to defendant. Dr. Weinshel's testimony was excluded because the prosecution was anticipating that defendant might raise the issue of his poor health (specifically a chronic back injury). No such evidence had been introduced by defendant.

There were no improper questions asked. We are convinced Dr. Weinshel's appearance did not prejudice

---

[4] *Id.* at pages 2, 3, sec. 1913.

[5] *Id.* at page 89, sec. 1915 (8).

defendant's case because no fact or reference harmful to defendant could be drawn from Dr. Weinshel's appearance.

Defendant also contends that the calling of Willie Fred Williams, the codefendant, as a witness for the state, was prejudicial error. Initially, the two men were to be tried jointly but the trial court granted separate trials.

Before Taylor's trial, Williams had told the assistant district attorney that both he and Taylor were in the jewelry store at the time of the theft. The assistant district attorney told Williams that he would recommend probation for him.

Williams was called to the stand by the state but before any testimony was elicited the court held a conference in chambers to advise Williams of his right not to incriminate himself by his testimony. At this point defense counsel moved for a mistrial on the ground that Williams and the prosecutor had agreed to a plea bargain. The motion was denied.

In court, Williams was called by the prosecution but refused to testify. Williams was then called by the defense and testified that he had never seen the defendant before his court appearance. On cross-examination Williams admitted that he and the assistant district attorney had agreed to a plea bargain.

There is no evidence in the record that indicates the plea bargaining was improper. The assistant district attorney promised only a recommendation of probation for Williams.

The use of the prior inconsistent statement of Williams to impeach the credibility of his testimony for the defense was not improper. *Harris v. New York* (1971), 401 U. S. 222, 91 Sup. Ct. 643, 28 L. Ed. 2d 1.

It is apparent from the record that Taylor was guilty of the theft of the watch. Both owners saw the defendant steal the watch. The police officer, Dekker, arrested Taylor on the basis of the description of the thief given

to the police by the owners of the jewelry store. The prosecutorial conduct alleged to have caused an unfair trial is to be considered in the whole context of the trial.

The alleged misconduct is harmless if, in its absence, the same result would have been reached by the jury on the facts presented. *Claybrooks v. State* (1971), 50 Wis. 2d 79, 183 N. W. 2d 139. Such is the case here.

The motion for a mistrial based on prosecutorial misconduct is addressed to the discretion of the trial court. An appellate court will not reverse this unless the trial court has abused its discretion.[6] We have no hesitancy in declaring that there has been no abuse of discretion in the instant case. The record amply demonstrates that the defendant was guilty and fairly convicted.

*By the Court.*—Judgment and order affirmed.

---

[6] *State v. Holmstrom* (1969), 43 Wis. 2d 465, 168 N. W. 2d 574; *Blackwell v. State* (1969), 42 Wis. 2d 615, 167 N. W. 2d 587; *Dascenzo v. State* (1965), 26 Wis. 2d 225, 132 N. W. 2d 231.