GENOVA, Defendant-Appellant, v. STATE,
Plaintiff-Respondent.

Court of Appeals

*No. 78–790–CR.  Argued June 20, 1979.—*
*Decided September 21, 1979.*
(Also reported in 283 N.W.2d 483.)

596

598

For the appellant the cause was submitted on the brief of *Clifford R. Steele* and *William M. Coffey* and *Coffey & Coffey,* of Milwaukee, with oral argument by *Clifford R. Steele.*

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Pamela Magee-Heilprin,* assistant attorney general, with oral argument by *Pamela Magee-Heilprin.*

Before Decker, C.J., Moser, P.J. and Cannon, J.

DECKER, C.J. The defendant, John A. Genova, was charged on June 18, 1976, with theft, party to a crime, in violation of secs. 943.20(1)(a) and (3)(b), and 939.05, Stats.[1] Following a trial by a jury, the defendant was found guilty as charged. His sentence was withheld and he was placed on probation for three years, the first sixty days to be served pursuant to sec. 973.09(4).[2] The trial court denied the defendant's postconviction motions for dismissal of the action, for judgment of acquittal notwithstanding the jury verdict, or alternatively, for a new trial.

At trial, the state's primary witness was Erwin Magritz, who had been charged as the principal in the theft and entered a plea of guilty to the charge. He testified that he stole a motor from a boat at the apartment complex in which he lived. He approached the defendant several days later to determine if Genova wanted to buy the motor. According to Magritz, he informed the defendant that he had taken the motor from a trailer bearing Florida license plates. He also testified that he told Genova the motor was "hot." The defendant stated he was not interested, but indicated that his brother might be interested.

Magritz further testified that he again approached the defendant and was informed that his brother did not

[1] The defendant moved to dismiss the complaint. The trial court granted the motion, finding that the defendant's alleged middleman status in the transfer of stolen property was not sufficient to support a charge of theft, party to a crime. On appeal to the Wisconsin Supreme Court, the trial court order granting the defendant's motion to dismiss was reversed. *State v. Genova*, 77 Wis.2d 141, 252 N.W.2d 380 (1977). The supreme court held that the term "transfer" as used in sec. 943.20(1)(a), Stats., was applicable to transfers of stolen property, regardless of who was in possession of the property at the time of the transfer. On remand, the complaint was reinstated.

[2] The work/release portion of the defendant's sentence was stayed pending appeal.

wish to purchase the motor, but Genova knew someone else who might. Genova produced a business card for General Specialties Company. Genova stated that General Specialties would buy anything as long as it was "hot." Genova then called someone on the telephone and asked whether the person on the phone was interested in buying the motor. Genova told Magritz that he was picking up some furniture from General Specialties in a few days and that he would inquire in person regarding the motor. While on the telephone, Genova asked Magritz what price he wanted for the motor. Magritz said between $400 and $500, and Genova repeated this over the telephone. This conversation took place around May 3 or May 4, 1975. Genova told Magritz to go over to General Specialties anytime after 1 p.m. Magritz took the business card from Genova.

Magritz then picked up a friend who helped load the motor into the car. He went to General Specialties at about 1:15 p.m. on May 6, 1975. He was met by a man with glasses. Magritz told this man that Genova had sent him. Magritz then drove his truck into the building and showed the motor to the man. They went into an office and discussed the price. Magritz informed the man of the source of the motor.

Magritz was paid $375 for the motor. Magritz said that Genova was not going to get a cut from this sale, but that he had sold Genova a $275 stereo for $40 the previous week. Magritz could not testify that he told Genova that the stereo was "hot."

Magritz then testified concerning the plea bargain entered into with the state. Pursuant to this plea bargain, Magritz pleaded guilty to theft, party to a crime, as charged. In return for his testimony against Genova, and his guilty plea, the state agreed to remain silent on the disposition of his case at sentencing.

James Duff, an agent for the Bureau of Alcohol, Tobacco and Firearms, testified that his Bureau, the

FBI, and the State Department of Justice, Bureau of Criminal Investigation, set up a store front, under the name of General Specialties Company, for the main purpose of buying stolen property. As a front, the legitimate sale of furniture was conducted on the premises. On April 30, 1975, Agent Duff and another agent were at Genova's restaurant and were introduced to Genova. Duff testified that he asked Genova about selling merchandise, indicating a willingness to buy almost anything "if the price was right." Genova said that he was no longer handling stuff although he had in the past. Genova said, however, that he would refer people.

On May 2 at about 5 p.m., Genova came to General Specialties and looked at some furniture. Duff had talked to him regarding furniture on April 30, 1975, and told Genova that they would give him the right price on it. On May 5, 1975, Genova went to General Specialties to pick up the furniture. Genova told Duff that someone wanted to sell a "hot" motor. Duff said that he was interested but had to talk to his partners. Genova said that the seller wanted about $450 and that the motor was worth about $1600. All other contacts with Genova were at Genova's restaurant.

On May 6, 1975, at 1:30 p.m., Magritz came to General Specialties. Duff asked Magritz if Genova had sent him, and Magritz said that he had. Duff then had Magritz drive his truck into the shop. Magritz showed the motor and a battery with the case to Duff and another agent. The agents bought the motor for $375. Magritz informed them that the motor was stolen.

Ernest Smith, an agent for the Wisconsin Department of Justice, Division of Criminal Investigation, testified basically in support of Duff's testimony. The state then rested. The defense made a motion to dismiss which was denied.

The defense then called John Genova. He testified that he had known Magritz for about fifteen years.

Genova was introduced to James Duff in late April or early May of 1975. Duff was going under an assumed name. Duff informed Genova that he was interested in buying merchandise at a price, but Duff did not mention stolen property. Genova told Duff that he had been in trouble in 1972, and that he "didn't do that any more."

At the end of April, 1975, Genova talked to Magritz at Genova's car lot. The conversation concerned the purchase of a motor. Genova told Magritz that he was not interested but that his brother might be. A couple days later Genova informed Magritz that his brother was not interested. Duff had been in the restaurant. Genova asked him about the motor and Duff said he was probably interested. When Magritz came to the restaurant, Genova called Duff's place. Genova testified that he gave Magritz the phone and that Magritz made all the arrangements. He had no conversation regarding the motor when he picked up the furniture from Duff's place. Genova testified that he never told Duff that the motor was stolen because Genova did not know that it was. He also never received any money from Magritz.

During a conference in chambers, the state had informed the trial court that it intended to ask the defendant questions relating to the purchase of stolen merchandise from Magritz. The state indicated that it sought to elicit answers from Genova concerning other crimes or conduct of a criminal nature. The defense counsel objected to any such questions by the state. The court ruled that there should be no reference to prior dealings between Magritz and Genova regarding the sale of stolen merchandise, because such inquiry was broad and unduly prejudicial. Magritz was then instructed not to answer any questions or to make any statements concerning the purchase of stolen merchandise by Genova on other occasions.[3]

---

[3] MR. NELSON: The record should reflect the presence of Erwin Magritz. Mr. Magritz, we have read over the affidavit you gave

On cross-examination, the prosecuting attorney asked Genova, "Now, you heard Mr. Magritz testify that he had sold you stolen merchandise in the past, did you not?" Defense counsel objected to the prosecuting attorney's statement as being "an improper statement of what the testimony was." The trial court sustained the objection, at which time the defense counsel, out of the presence of the jury, made a motion for mistrial. After the motion for mistrial was denied, the defense attorney requested, and the judge gave, a curative instruction.

The issues raised on appeal are discussed seriatim.

## I. ALLEGED ERROR IN INSTRUCTING THE JURY

### A. The Problem

Twenty-nine approved pattern Wisconsin Criminal Jury Instructions contain the following language:[4]

just today, and I am pointing to you here the reason why you went to John Genova with that motor, and here your statement indicates that he had broughten [sic] merchandise from your [sic] previously and that it was stolen merchandise.

We just had a discussion about that, and I was ruled against. I cannot have you give that as an answer, so when you testify, do not say that you had boughten [sic] stolen merchandise from Magritz in the past or from Genova in the past. Have you got that?

MR. MAGRITZ: U-hah.

MR. NELSON: In other words, don't refer to the fact that the reason you went there is because you had prior dealings with him on any kind of stolen merchandise.

MR. MAGRITZ: Alright

MR. NELSON: That's right. (Tr. 48, 49, 50).

[4] *Lofton v. State*, 83 Wis.2d 472, 491, n. 1, 266 N.W.2d 576, 584, n. 1 (1978) (Abrahamson, J., concurring.) We note that our analysis is directed to only one of those twenty-nine pattern instructions. The analysis is in the context of the instructions given. The results of our analysis of a single instruction cannot be

"When there are no circumstances to prevent or rebut the presumption, the law presumes that a reasonable person intends all of the natural, probable and usual consequences of his deliberate acts."

In this case the defendant launches a constitutional attack against the quoted portion of the instruction based upon due process grounds. The presumption language contained in the instruction has been labeled as a *"Mann"* instruction because in *Mann v. United States,* 319 F.2d 404 (1963), *cert. denied,* 375 U.S. 986 (1964), the Fifth Circuit held a similar instruction to be reversible error. Relatively recently other federal courts have viewed the presumption language of similar instructions as violative of due process, because the jury may be misled into believing that the prosecution has been relieved of the burden of proving each element of the offense (in this case intent) beyond a reasonable doubt, and that the burden of persuasion has been shifted to the defendant to disprove an element of the crime. If either event is established, constitutional error results and is grounded upon the fourteenth amendment due process clause. The defendant also contends that the language in the instruc-

given sweeping application to each of the twenty-nine instructions without considering the "presumption language" in the context of the balance of the instructions actually spoken to the jury. For example, in Wis. J I—Crim., 1100, 1102, 1105, 1135, 1145, 1220, 1225, 1240, 1400, 1404, 1405 and 1408, the presumption language is supplemented with an additional sentence which is not present in the instant case: "When there are no circumstances to prevent or rebut the presumption, the law presumes that a reasonable person intends all of the natural, probable, and usual consequences of his deliberate acts. If one person *(administers poison)* likely to kill, and the person thus *(poisoned)* dies therefrom, then when there are no circumstances to prevent or rebut the presumption, the legal and natural presumption is that death was intended."

The two-sentence presumption language is obviously more perilous. The issue with respect to the validity of the two-sentence instruction is not before us in this case.

tion as given to the jury in this case is contrary to the requirements of sec. 903.03(3), Stats.[5]

The Uniform Criminal Jury Instructions Committee identified the thrust of the federal cases and recognized the peril of continued use of the approved language of the instructions in spite of earlier and specific approval of the presumption language by our supreme court.[6] Consequently, the committee proposed altered instructions that omitted the presumption language.[7]

The history of presumptions, as that term is used in evidence law, is confusing, complex, and laced with contradictions.[8] Wisconsin, effective in 1974, adopted the Wisconsin Rules of Evidence in which the treatment of civil and criminal presumptions was substantially the same as the Federal Rules of Evidence promulgated by the United States Supreme Court. Those Rules have shed light upon the difference between presumptions in civil cases and the use of permissive inferences in criminal cases.

It is axiomatic that the burden of persuasion can never be shifted from the state to the defendant in a criminal

---

[5] Section 903.03(3), Stats., provides:
Presumptions in criminal cases.

. . . .

(3) INSTRUCTING THE JURY. Whenever the existence of a presumed fact against the accused is submitted to the jury, the judge shall give an instruction that the law declares that the jury may regard the basic facts as sufficient evidence of the presumed fact but does not require it to do so. In addition, if the presumed fact establishes guilt or is an element of the offense or negatives a defense, the judge shall instruct the jury that its existence must, on all the evidence, be proved beyond a reasonable doubt.

[6] *See Johnson v. State*, 85 Wis.2d 22, 32–33, 270 N.W.2d 153, 158 (1978).

[7] *Loften v. State, supra,* note 4 at 492 n. 3, 266 N.W.2d at 584 n. 3.

[8] For a brief discussion, see Judicial Council Committee's Notes to sec. 903.01, Stats., 59 Wis.2d R. 41.

case. Equally unequivocal is the principle that the state has the burden of proving, by a quantum evidence described as beyond a reasonable doubt, every element of the crime for which the defendant is prosecuted. The distinction in procedural effect of civil presumptions and "criminal presumptions" has been recognized in secs. 903.01 and 903.03, Stats. In sum, a "criminal presumption" is not a presumption at all but simply a permissive inference, that is, a finding of fact that may be grounded upon circumstantial evidence.[9] Thus, a permissive inference is judicially-approved logic that endorses evidence of a basic fact as circumstantially sufficient to permit, but not compel, an inferred fact which must be established if the finder of the fact's affirmative ultimate conclusion is to be upheld.[10]

Legal terminology has a propensity for survival long after its substance has changed and the terms no longer correctly describe the concept involved. The phenomenon is evident in sec. 903.03, Stats., which continues the semantically incorrect and inappropriate use of the word "presumption" in connection with the title to sec. 903.03 applicable to criminal cases, although the procedural effect is clearly described as that of a permissive inference.

Presumptions and permissive inferences are procedural tools that enable a plaintiff to survive a motion to dismiss (nonsuit or directed verdict) or, on review, establish the circumstantial sufficiency of the evidence to justify a predicate fact. A permissive inference is really a court-approved logical relationship which establishes the sufficiency of the circumstantial evidence of an inferred fact. A presumption in a civil case is grounded upon logical relationship or policy, or both, of the basic

---

[9] *See* Judicial Council Committee's Notes, sec. 903.03(1), 59 Wis.2d R. 57.

[10] *State v. Bloedow*, 45 Wis. 279, 280 (1878) ; *Lowe v. State*, 118 Wis. 641, 655–660, 96 N.W. 417, 422 (1903).

fact to the presumed fact. The policy involved in the presumption is supplied by either the common law or statute, or both.

The important point to be made is that a "presumption" in a criminal case is constitutionally impermissible if:

1. It shifts the burden of persuasion to the defendant; or

2. It relieves the state of its burden to establish beyond a reasonable doubt every element of the crime or negate every defense; or

3. It relieves the jury of its duty to find every element of the crime beyond a reasonable doubt from its own independent consideration of the evidence.

Each of the above results is proscribed statutorily by sec. 903.03(3), Stats.

It can be seen that logic, and not policy, is the requisite and permissible ingredient of a criminal case presumption to establish the sufficiency of proof of an inferred fact by the circumstantial evidence upon which the inferred fact is grounded. The logical persuasiveness of the inference has been described as "rationale connection" and varies in degree from the minimum standard that the implied fact is "more likely than not to flow from" the circumstantial evidence upon which it is grounded to the federally-approved "mandatory presumptions" where the rational connection must be established "beyond a reasonable doubt."[11]

We think it apparent from our historical discussion of the problem that the thrust of this appeal requires us to determine whether the challenged presumption language is constitutionally impermissible.

---

[11] *Ulster County v. Allen,* — U.S. —, 99 S. Ct. 2213, 2228–2230, 60 L. Ed.2d 777, 797–98 (1979). The case with which we deal today does not involve a "mandatory presumption" grounded upon a rational connection beyond a reasonable doubt.

## B. Recent Cases

The trend apparent in predominantly federal cases which we noted above is informative but not necessarily conclusive. Therefore, we are fortunate to have recent expressions from the United States Supreme Court and our Wisconsin Supreme Court to aid us and provide a basis for our analysis.

Longstanding and specific approval by our supreme court of the presumption language here involved in criminal case jury instructions was recently challenged by a minority of the court in Justice Abrahamson's concurring opinion in *Lofton v. State, supra,* note 4 at 490, 266 N.W.2d at 584. Although the minority clearly identified the problem that is presented in this case, neither its opinion nor the majority opinion attempted specific resolution of the issue. Subsequently, our supreme court reiterated earlier comments directed toward presumption language in *Johnson v. State,* 85 Wis.2d 22, 32–3, 270 N.W.2d 153, 158 (1978), but did not directly address the question of the validity of presumption language on the element of intent. Justice Abrahamson again concurred in a one-sentence opinion warning that "the majority opinion should not be interpreted as approving such [presumption] language."

This court noted the latent problem inherent in the use of presumption language in criminal case jury instructions in *Cranmore v. State,* 85 Wis.2d 722, 770–71, 271 N.W.2d 402, 426 (Ct. App. 1978), but relied upon an analysis of the evidence in the case and the *Lofton* decision. Review of our decision was denied by our supreme court. In *Cranmore* we characterized presumption language as "fraught with the peril that a jury may construe an instruction as directive rather than permissive." Two recent decisions of the United States Supreme Court establishes that the peril is neither latent nor academic.

Judicial consideration of presumption language culminated a few weeks ago in the address of the constitutional authority of the United States Supreme Court to the due process validity of the challenged instruction.

In *Ulster County Court v. Allen,* — U.S. —, 99 S. Ct. 2213, 60 L. Ed.2d 777 (1979), a New York statutory presumption that the presence of a firearm in an automobile is presumptive evidence of its alleged possession by all persons then occupying the vehicle was challenged. Three adult males and a sixteen-year old female were jointly tried on possession of two loaded handguns which were positioned crosswise in the female's open handbag located on either the front floor or front seat of the car on the passenger side where she was sitting. Ultimately, the New York Court of Appeals affirmed the conviction, determined the applicability of the presumption, and rejected the claim that the presumption was unconstitutional as applied.

The adult males then collaterally attacked the presumption in the federal courts as a denial of due process. The Court of Appeals for the Second Circuit concluded that the presumption was facially unconstitutional, but the majority did not reach the question of its constitutionality as applied. The Supreme Court granted *certiorari* on the state's petition.

The plurality opinion of the Court addressed the nature, necessity, value, and validity of inferences and presumptions:

Inferences and presumptions are a staple of our adversarial system of fact-finding. It is often necessary for the trier of fact to determine the existence of an element of the crime—that is, an "ultimate" or "elemental" fact—from the existence of one or more "evidentiary" or "basic" facts. [citations omitted.] The value of these evidentiary devices, and their validity under the Due Process Clause, vary from case to case, however, depend-

ing on the strength of the connection between the particular basic and elemental facts involved and on the degree to which the device curtails the fact-finder's freedom to assess the evidence independently. *Nonetheless, in criminal cases, the ultimate test of any device's constitutional validity in a given case remains constant: the device must not undermine the fact-finder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt.* See *In re Winship*, 397 U.S. 358, 364; *Mullaney v. Wilbur*, 421 U.S. 684, 702–703, n.31. [*Ulster County* at 2224, 60 L. Ed.2d at 791–2. Emphasis supplied].

The court also noted the "troublesome" nature of a mandatory presumption because it undermines an independent analysis of the evidence by the jury, dilutes the state's burden of proof, and tends to shift the placement of "that burden."[12]

Concluding from the instructions that the presumption was permissive, the Court found no violation of the due process clause. Four Justices joined in a vigorous dissent which (1) contended that any presumption, permissive or mandatory, must be more likely than not true,[13] and (2) concluded that "[p]eople present in automobiles where there are weapons simply are not 'more likely than not' the possessors of those weapons."[14] Apparently the most serious dispute between the plurality and the dissent was the methodology of the plurality in consideration of other evidence than the basic fact of the presumption to establish its constitutionality. The dissenters would, on the contrary ascertain the constitutional valid-

---

[12] Apparently the burden of proof referred to is either the burden of production of evidence, or the burden of persuasion, or both. *Ulster County, supra*, note 11 at —, 99 S. Ct. at 2225 n 16, 60 L. Ed.2d at 792 n. 16.

[13] We do not read the plurality opinion as contradicting that contention.

[14] *Ulster County, supra*, note 11 at —, 99 S. Ct. at 2233, 60 L. Ed.2d at 802.

ity in isolation, that is, by determining solely from the presumption whether the rational connection between basic fact and elemental fact was more likely than not true.

On June 18, 1979, only two weeks after *Ulster County*, an opinion joined in by seven Justices with the result concurred in by the remaining two Justices again addressed the subject of presumptions in criminal cases in *Sandstrom v. Montana*, — U.S. —, 99 S. Ct. 2450, 61 L. Ed.2d 39 (1979). Sandstrom was charged with the "deliberate homicide"[15] of Jessen. Defendant's attorney contended that because of a personality disorder aggravated by alcohol consumption, Sandstrom did not kill Jessen "purposely or knowingly." Over the due process objection of defense counsel, the trial court instructed the jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." Sandstrom was convicted and sentenced. He appealed to the Montana Supreme Court which affirmed the conviction. The United States Supreme Court granted *certiorari* and reversed, finding the presumption instruction constitutionally infirm.

The Court concluded that the jury may have interpreted the judge's instruction as constituting a burden-shifting presumption invalidated in *Mullaney*[16] or a conclusive presumption invalidated in *Morisette*[17] and *United States Gypsum*.[18] The teaching of *Sandstrom* is:

---

[15] Deliberate homicide is defined as purposely, knowingly, or negligently causing the death of another human being. 1947 Mont. Rev. Codes, §94–5–101(1) (Crim. Code. of 1973). Negligent cause is not involved in the case.

[16] *Mullaney v. Wilbur*, 421 U.S. 684 (1975).

[17] *Morisette v. United States*, 342 U.S. 246 (1952).

[18] *United States v. United States Gypsum*, 438 U.S. 422 (1978).

The threshold inquiry in ascertaining the constitutional analysis applicable to this kind of jury instruction is to determine the nature of the presumption it describes. *See Ulster County Court v. Allen,* — U.S. — (1979). (slip. op., at 15–21). [99 S. Ct. 2213, 2224–2227, 60 L. Ed. 2d 777 (1979)]. That determination requires careful attention to the words actually spoken to the jury, *see id.,* at n. 16, for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction. [*Sandstrom* at —, 99 S. Ct. at 2454, 61 L. Ed.2d at 45.]

With the guidance of *Ulster County* and *Sandstrom,* we proceed to an analysis of the Genova jury instruction.

C. Analysis

The crime of theft, contrary to sec. 943.20(1)(a), Stats., requires that the state must prove four elements of the offense by evidence which satisfies the jury beyond a reasonable doubt. Two of those elements are that the defendant intentionally transferred movable property of another without lawful authority, and that such transfer by the defendant was with intent to deprive the owner permanently of the possession of the property. "Intent" and "intentionally" were equated with "purpose." This appeal thrusts at the due process validity of the jury instructions pertinent to those dual elements of intent. Because the context of the challenged language is crucial, we have set forth in the margin pertinent portions of the jury instructions.[19]

---

[19] Theft, as defined in Section 943.20(1)(a) of the Criminal Code of Wisconsin, is committed by one who intentionally transfers movable property of another without consent and with intent to deprive the owner permanently of possession of such property.

An outboard motor is movable property.

Before the defendant may be found guilty of theft under Section 943.20(1)(a) the State must prove by evidence which satisfies you beyond a reasonable doubt that there were present the following four elements of this offense:

First, that the defendant intentionally transferred movable property of another without lawful authority.

In this case, unlike *Ulster County*, a statutory presumption is not involved. Such statutory presumptions are legislative enactments that facilitate a prosecution for a violation of legislatively proscribed conduct and thus are sometimes suspect as a legislative thumb on the scales of justice. A plethora of commentaries about the validity of presumptions in criminal cases[20] have almost

Intentionally, as here used, means that the defendant must have had the purpose to transfer the property involved, knowing that it belonged to another and that he had no right to transfer it.

Secondly, that the defendant transferred such property without the consent of the owner of such property.

Third, that the defendant knew that such transfer of such property was without consent.

Fourth, that the defendant transferred such property with intent to deprive the owner permanently of its possession.

The intent to deprive the owner permanently of possession of his property means that the defendant has a purpose permanently to deprive the owner of such possession.

You cannot look into a man's mind to find out his intent. While this intent to deprive the owner permanently of possession of his property must be found as a fact before you can find the defendant guilty of theft, it must be found, if found at all, from his acts and his words and statements, if any, bearing upon his intent.

When there are no circumstances to prevent or rebut the presumption, the law presumes that a reasonable person intends all of the natural and probable and usual consequences of his deliberate acts.

If you are satisfied beyond a reasonable doubt from the evidence in this case that the defendant intentionally transferred movable property of another without his consent, that the defendant knew that such property belonged to another, from whom he had no right to take it, or transfer it, and that the defendant intended to deprive the owner permanently of possession of such property, then you should find the defendant guilty of theft as charged in the information and you should find the value of the property stolen, and insert the same in the verdict.

If, however, you are not so satisfied, then you must find the defendant not guilty.

[20] The commentaries are cited in the footnotes to two recent extensive comments: Jeffries and Stephan, "Defenses, Presump-

exclusively emphasized the effect of statutory presumptions. In this case we deal with presumption language which does not originate in a statute, but is instead judicially-approved permissible logic. Whether the presumption language originates in a legislative enactment or in a judicially-approved reasoning process, the result to be avoided is the same, and the analysis of the validity of the presumption is generally the same. Nonetheless, a statutory presumption is different from a judicially-approved reasoning process of which the jury is informed in the jury instructions, as in this case, because the statutory presumption intends to make easier the conviction for prohibited conduct, while the kind of instruction involved in this case intends only to inform the jury of a reasoning process which it is free to reject.

To be construed in this case is a judge's information to a jury that the law has approved a process of logical reason in the recurring fact situation of establishing intent, that is, the conduct of a person in committing a proscribed act *may* be considered by the jury and *may* be sufficient to support first an inference and ultimately a conclusion that the result of the conduct was intended. *Sandstrom* included a judge's jury instruction presumption language and it also involved a statute which extended evidentiary weight to such language.

Our review of the instructions in this case has led us to the conclusion that they are not constitutionally infirm, and we set forth our reasons for that conclusion as demonstrative of the analysis we made.

1. The jury was admonished that "intent . . . must be found *as a fact* . . ." and further admonished that if found at all, it must be found "from [the defendant's] acts and his words and statements, if any, bearing upon his intent." Thus, the jury was admonished to consider

tions and Burden of Proof in the Criminal Law," 88 Yale L.J. 1325 (1979), and Nesson, "Reasonable Doubt and Permissive Inferences: The Value of Complexity," 92 Harv. L.R. 1187 (1979).

the evidence in the case and not to rely upon the inference or "presumption" as a substitute for evidence.

2. The jury was informed that it must be satisfied beyond a reasonable doubt that intent and the other elements of the crime of theft were established "from the evidence in this case" and that if it were not so satisfied it "must find the defendant not guilty." Also the jury was warned to "scrutinize the evidence with the utmost care and caution" and after such scrutiny, to find the defendant not guilty if the jury had a reasonable doubt of his guilt. Thus the jury was not relieved of its duty to analyze the evidence, nor was the jury relieved of its duty to ground its conclusion upon the evidence and not the permissive inference.

3. The jury was informed of the *overriding* character of the presumption of innocence which attended the defendant throughout the trial and prevailed at its close "unless overcome *by evidence*" which satisfied the jury of the defendant's guilt beyond a reasonable doubt. Again the jury was advised to assume the innocence of the defendant unless evidence to the contrary (not the permissive inference) established guilt.

4. The jury was informed that if it could reconcile the evidence upon any reasonable hypothesis consistent with innocence, it should find the defendant not guilty.

5. The jury was informed that the defendant "was not required to prove his innocence" and that the burden of proving the defendant guilty "of *every element*" of the crime charged was on the state.

6. Finally, the jury was informed: "It is your duty to draw your own conclusion and *your own inferences from the evidence,* and to decide upon your verdict according to the evidence under the instructions given you by the court." (Emphasis supplied.)

7. Affording the prescribed "careful attention to the words actually spoken," we find the presumption lan-

guage enfolded within, and dominated by, repetitive directions to the jurors to make up their own minds *from the evidence*. We note in addition that *unlike the Montana instruction*,[21] the jurors were told that the presumption was operative only when there were no rebutting circumstances. Thus, the "lack of qualifying instructions as to to the legal effect of the presumption" in the Montana case was not present in this case.

8. The presumption language in this case differs substantially from that in *Sandstrom*. The Montana instruction by its terms applies to *any* person, but the Wisconsin instruction applies only to a reasonable person. Thus, the evidence may be evaluated by the jury in the context of its application to the defendant. In this connection it should be noted that the presumption language in the case at hand is not directed to the intent of *any* reasonable person, but rather, the intent of the defendant as specified in the four sentences immediately preceding the presumption language. In Montana the consequences need only be "ordinary," but in Wisconsin they must be "natural, probable and usual."

9. In the Montana instruction the jurors were not told they had a choice in applying a presumption, but in Wisconsin the instruction commanded the jurors to their own views from and after a careful scrutiny of the evidence.

10. We note that Montana conceded that "it's possible" that the jurors believed that they were required to apply the presumption and that there was "a risk" that the jury, acting upon Sandstrom's concession that his act was voluntary, would interpret the instruction as automatically directing a finding of intent. No such concessions have been made by the state of Wisconsin.

[21] *Sandstrom v. Montana*, — U.S. —, —, 99 S. Ct. 2450, 2454, 61 L. Ed.2d 39, 44 (1979).

In Montana the presumption flows from "voluntary" acts, but in Wisconsin the consequences must flow from "deliberate" acts. We are unable, in the context of the pertinent instructions, to conclude that the jury was directed or misled into interpreting the presumption language as either conclusive, directory, or as shifting the burden of proof (either production or persuasion) to the defendant.

11. Montana Rules of Evidence, generally modeled after the Federal Rules of Evidence as are the Wisconsin rules, failed to profit by early drafts of the Federal Rules applicable to presumptions because the differing procedural effect of such devices in civil and criminal cases is not distinguished. That error was not made in Wisconsin where sec. 903.03, Stats., largely a codification of prior Wisconsin common law, specifies the procedural effect of a presumption in a criminal case as that of a permissive inference. The Montana application of a universal presumption rule to a criminal case unlawfully shifted the burden of persuasion to the defendant to rebut the presumption. Thus, there is no danger that the Wisconsin trial judge unlawfully intended to shift the burden of persuasion to the defendant.

12. We conclude that, in this case, the jury "remain[ed] free to consider additional evidence before accepting or rejecting the inference . . . . [U]ltimately the decision on the issue of intent must be left to the trier of fact alone."[22]

13. Unlike the Montana instruction in *Sandstrom,* the inference permitted to be shown by the jury is operative *only* when there is an absence of evidence, circumstantial or direct, with respect to intent. The instruction is not unceasing in its application, but acts only in the absence of countervailing evidence with respect to intent. Because

---

[22] *United States Gypsum, supra,* note 18 at 446.

it is applicable only in a void of rebutting evidence, it in no way shifts the burden of proof to the defendant.

14. Because the instruction is operative *only* in the absence of countervailing evidence, its instructive effect upon the jury is merely to acknowledge a logical reasoning process. As put by Justice Abrahamson, it describes a "process of reasoning that may lead the trier of fact" to a conclusion.[23] A reasoning process permitted by the law enables the jury, in the absence of other evidence, to infer intent from the defendant's acts if the jury concludes and accepts a logical relationship between those acts and the ultimate inference of intent.

15. The instruction presumption language does not direct a finding by the jury, nor does it shift either the burden of production of evidence or the burden of persuasion to the defendant. Thus, there is no compulsion upon the jury to utilize the "presumption," nor is there compulsion upon the defendant to meet the "presumption" with evidence refuting the permitted inference of intent.

16. The presumption language is grounded upon the facts in evidence, not the law. The construction emphasizes consideration of direct and circumstanial evidence that either refutes or establishes the subjective element of intent. Thus, the prosecution's case is grounded upon the facts, not the presumption language.

17. The strength of the "no reasonable doubt" burden is neither diluted nor undermined because the burden of proof is not shifted, nor is the case grounded upon the presumption language.

18. We conclude that a reasonable juror, considering the application of the questioned presumption instructions, would not:

[23] *Lofton v. State*, 83 Wis.2d at 490, 266 N.W.2d at 584, concurring opinion.

 a. be misled about the permissive effect of the instruction;

 b. attribute conclusive effect to the instruction;

 c. believe the state's burden of proof to prove every element of the charged crime beyond a reasonable doubt was diluted or undermined;

 d. believe that the presumption of the defendant's innocence was contradicted;

 e. consider the burden of producing evidence or the burden of persuasion was shifted to the defendant;

 f. consider the instruction directory or binding in the absence of rebutting circumstances.

We find the challenged instruction not to be a "mandatory presumption" and find that its permissive effect and nature is not violative of due process under the United States or Wisconsin Constitutions.

We have not considered the question of rational connection between the basic fact and the inferred fact, nor the requisite that the inferred fact "more likely than not" flows from the basic fact because that has not been challenged in this case, and facially it appears unassailable when related to intent.

The defendant also urges as a ground for reversal that the trial court failed to comply with the directives of sec. 903.03,[24] Stats., in instructing the jury regarding the "presumption" that a person intends the natural and probable and usual consequences of his deliberate acts.

The directive of this statute to the trial court is intended to correctly specify the procedural effect of a "presumption" in a criminal case. Proof of a basic fact or facts in a criminal case permits, but does not require, the jury to infer the "presumed" fact or facts.

As we have stated above, the instruction given in this case advised the jury of the process of reasoning by

---

[24] The pertinent provisions of sec. 903.03 are contained in note 5, supra.

which intent could be found. In substance they were advised that they could, though they need not, conclude that proof of the defendant's deliberate acts (or words or statements) was "inferentially probative of the requisite intent."[25] They were also repeatedly advised that each element of the crime, including defendant's intent, must be established beyond a reasonable doubt. The instructions consequently complied with the directives of sec. 903.03, Stats.

## EPILOGUE

This case was tried only a month after the Uniform Criminal Jury Instructions Committee prepared a memorandum which proposed a modification of Wisconsin's Criminal Jury Instructions with respect to intent. Undoubtedly that memorandum had not been distributed to the trial court in time for use in this case.

The proposed modification properly omits a reference to the "law presumes." Omission of "presumption language" avoids the "peril" of which we warned in *Cranmore*. Unfortunately, that warning came too late for the trial of this case. Elimination of presumption language in criminal case instructions wherever and whenever possible will avoid the tedious and burdensome analysis of its effect that is necessary to assure the protection of the rights guaranteed by our Constitutions.

## II. MISTRIAL v. CURATIVE INSTRUCTION

Generally, an improper but unanswered question is not sufficient error to require reversal on appeal. *Taylor v.*

---

[25] As we did in *Cranmore v. State*, 85 Wis.2d at 770, 271 N.W.2d at 426 (Ct. App. 1978), we again urge the use of the new instruction recently adopted by the Uniform Jury Instructions Committee to Wisconsin Criminal Court Judges. This instruction eliminates reference to any presumption of intent and rebuttal of that presumption.

*State,* 52 Wis.2d 453, 457, 190 N.W.2d 208, 211 (1971). Where the trial court gives the jury a curative instruction, as it did in this case, the appellate court may conclude that such instruction erased any possible prejudice, unless the record supports the conclusion that the jury disregarded the trial court's admonition. *Taylor, supra.* A motion for mistrial based upon prosecutorial misconduct, here the asking of an improper question which was not answered, is within the sound discretion of the trial court. A trial court's denial of such motion will not be upset on appeal unless abuse of discretion is established. *Taylor, supra,* at 460, 190 N.W.2d at 212.

The trial court instructed the jury that the prosecuting attorney's question was stricken and that the jury was to disregard any implications or inferences which might have been drawn from the question. The defendant argues on appeal that he was denied his right to a fair trial before an impartial jury because of this question. We have reviewed the record in detail and cannot say that the instruction was insufficient to cure the error. The trial court did not abuse its discretion in denying the defendant's motion for mistrial.

## III.  LIMITATION ON CROSS-EXAMINATION

At trial, defense counsel requested an *in limine* ruling on whether it could inquire into the specifics of prior unrelated plea bargains between Magritz and the prosecution. The trial court ruled that with respect to prior criminal conduct unrelated to the present charge, the defense counsel was limited, on cross-examination, to inquiring about the number of Magritz's prior convictions. *Moore v. State,* 83 Wis.2d 285, 295, 265 N.W.2d 540, 543 (1978). The court refused to allow the defense to inquire about any plea bargains other than the one directly

related to the theft case. The trial court was correct in its ruling.

While it is true that the defendant must be allowed to bring out the motives of a state's witness, *State v. Gresens,* 40 Wis.2d 179, 186, 161 N.W.2d 245, 248 (1968), the prior unrelated plea bargains between Magritz and the state are in no way relevant to the motive of Magritz to testify against the defendant in this .case. The jury was told that Magritz had been convicted of a crime five times; and that Magritz agreed to plead guilty to the theft charge and to testify against the defendant with the promise by the state that it would remain silent on the disposition. That Magritz may have entered into prior unrelated plea bargains is irrelevant to this case.

## IV. MOTION TO DISMISS AND SUFFICIENCY OF THE EVIDENCE

Where the defendant, on appeal, challenges the sufficiency of the evidence supporting his conviction, the question is whether the evidence, considered in a light most favorable to the state, is "so insufficient in probative value and force that it can be said as a matter of law that no trier of facts acting reasonably could be convinced to that degree of certitude which the law defines as beyond a reasonable doubt." *Kanieski v. Gagnon,* 54 Wis.2d 108, 13, 194 N.W.2d 808, 810 (1972), quoted with approval in *State v. Clark,* 87 Wis.2d 804, 814, 275 N.W.2d 715, 720 (1979). Reasonable doubt does not mean that every doubt has been excluded. Rather it is "that degree of moral certitude based on convincing reason and excluding all doubt as to the existence of a different conclusion based on reasons. *State v. Gresens,* 40 Wis.2d 179, 182, 161 N.W.2d 245 (1968)." *Clark,*

*supra.* The same standard is applicable to review of the trial court's denial of the defendant's motion to dismiss at the close of the state's case. *State v. Duda,* 60 Wis.2d 431, 438–39, 210 N.W.2d 763, 767 (1973).

In *State v. Genova, supra,* note 1, the supreme court held that when a person assists another in the sale of property which the defendant knows to be stolen he is guilty as a party to that crime of theft. The actual principal in the crime and a law enforcement agent both testified that the defendant knew that the motor was stolen and thereafter acted to facilitate the transfer of that property to a third party.

Unquestionably the jury was entitled to conclude from this testimony that no reasonable doubt could exist as to the defendant's guilt.

## V. INTERESTS OF JUSTICE

The defendant contends that the cumulative effect of the alleged errors discussed above resulted in a deprivation of his right to a fair trial. "We have found each of the arguments to be without substance. Adding them together adds nothing. Zero plus zero equals zero." *Mentek v. State,* 71 Wis.2d 799, 809, 238 N.W.2d 752, 758 (1976).

*By the Court.*—Judgment and order affirmed.